OKI SEMICONDUCTOR COMPANY, an operating group of Oki America Inc, a Delaware corp., Plaintiff–Appellant,

v.

WELLS FARGO BANK, NATIONAL ASSOCIATION, Defendant–Appellee.

No. 00–35244.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 2002.

Filed July 22, 2002.

Michael R. Seidl, Seidl & Rizzo, LLP, Portland, OR, for the plaintiff-appellant.

Thomas W. Sondag, Lane Powell Spears Lubersky, LLP, Portland, OR, for the defendant-appellee.

Before TROTT, T.G. NELSON, Circuit Judges, and RHOADES, * District Judge.

## OPINION

TROTT, Circuit Judge.

A gang of thieves stole $9 million worth of semiconductors from Oki Semiconductor Company ("Oki"). Anne Tran ("Tran") laundered the proceeds of the gang's robbery through her employer, Wells Fargo Bank ("Wells Fargo"). Before the district court, Oki alleged that under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, Wells Fargo was vicariously liable for employee Tran's activities and the activities of her RICO co-conspirators. Oki alleged also that under Oregon common law Wells Fargo was negligent in supervising and training Tran. The district court dismissed Oki's complaint and denied its motion for leave to amend, reasoning that because Tran did not proximately cause Oki's loss, Wells Fargo was not liable to Oki. It held also that Wells Fargo incurred no vicarious liability for the acts of Tran's RICO conspirators, although those acts did proximately cause Oki's loss. Finally, the district court dismissed the negligence claim because Oki's injury was not a reasonably foreseeable result of Wells Fargo's alleged negligent conduct.

We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We conclude as a matter of law that Wells Fargo incurred no liability because Tran's money laundering did not proximately cause Oki's loss, and Tran's entry into a RICO conspiracy was not done within the course and scope of her employment. Accordingly, Oki's complaint stated no viable causes of action, and the deficiencies of the complaint could not be cured by amendment.

## BACKGROUND

Armed bandits planned and executed multiple robberies of Oki's semiconductor manufacturing plant in Tualatin, Oregon. Between April 1, 1993 and September 29, 1993, the gang hit Oki's manufacturing plant five times, stealing approximately 4,100 computer chips with a street value of nearly $18,000. Unsatisfied, these industrious thieves perpetrated an impressive heist on October 31, 1993, escaping with nearly $9 million worth of sophisticated semiconductors. When the FBI eventually infiltrated the gang, it identified Tran as a central participant in a conspiracy ("Conspiracy") devoted to stealing and selling semiconductors and then laundering the proceeds through a network of dummy corporations and sham bank accounts.

Wells Fargo employed Tran as a branch teller at a bank in California. Tran used her position at Wells Fargo to orchestrate the Conspiracy's financial affairs. She established numerous bank accounts in the names of fictitious entities and, by transferring money from one entity to another, funneled hundreds of thousands of dollars through the Conspiracy's financial network. Ultimately, the money emerged squeaky clean, laundered, and pressed, and then, it disappeared into the pockets of the Conspiracy's members. Due to Tran's expertise, this financial legerdemain did not generate a suspicious activity report or raise a regulatory red flag.

Oki filed suit in district court, alleging that Tran engaged in racketeering activities in violation of RICO. Instead of suing Tran directly, however, Oki, in search of a

* The Honorable John S. Rhoades, Sr., Senior United States District Judge for the Southern District of California, sitting by designation.

deep pocket, claimed that Wells Fargo was vicariously liable for Tran's malfeasance. Oki argued that Wells Fargo was liable because it reaped benefits from Tran's activities by "obtaining numerous new accounts and receiving millions of dollars in deposits." Oki further alleged that Tran committed her crimes "while acting within the course and scope of her employment ... using the training, offices, and other instrumentalities of her employment."

In addition, Oki sued Wells Fargo for common law negligence. Oki claimed Wells Fargo was negligent in (1) hiring, retaining, and promoting Tran when it knew or should have known that Tran was involved in criminal activities; (2) supervising Tran; (3) failing to detect Tran's suspicious transactions; and (4) allowing Tran signatory rights on personal and corporate bank accounts. Oki calculated its damages as the "value of the stolen chips and consequential damages for lost profits, business interruption, and incidental expenses associated with the thefts."

Wells Fargo moved to dismiss Oki's RICO claim because Tran's acts did not proximately cause Oki's loss. Wells Fargo sought also to dismiss Oki's negligence claim because it was not reasonably foreseeable that Wells Fargo's alleged negligence would cause Oki's injury. The magistrate judge recommended granting Wells Fargo's motion. Oki sought reconsideration of the magistrate judge's recommendation, claiming for the first time that Wells Fargo was liable because Tran was responsible for all the acts of the Conspiracy, even those acts in which she did not participate. Unconvinced by this novel argument, the magistrate judge adhered to his recommendation.

The district court agreed with the magistrate's recommendation and granted Wells Fargo's motion to dismiss. The district court reasoned that because Tran did not proximately cause Oki's loss, Wells Fargo was not liable to Oki. It held also that Wells Fargo incurred no vicarious liability for the acts of Tran's RICO conspirators, although those acts did proximately cause Oki's loss. Finally, the district court dismissed the negligence claim because Oki's injury was not a reasonably foreseeable result of Wells Fargo's alleged negligent conduct.

Oki filed a "reply memorandum" after the district court granted Wells Fargo's motion to dismiss. Oki asked the district court to reconsider its decision or, in the alternative, to grant Oki leave to allege additional aspects of the Conspiracy and name Tran as a defendant. Although the district court considered Oki's reply memorandum, it denied Oki's motion for leave to amend.

Oki appeals the dismissal of its complaint.

## STANDARD OF REVIEW

 We review de novo the district court's dismissal of a complaint for failure to state a claim. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir.1999). We accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of Oki. *See id.* We review de novo a dismissal without leave to amend. *Dumas v. Kipp*, 90 F.3d 386, 389(9th Cir.1996). Such a dismissal was proper only if Oki's complaint could not be cured by amendment. *See id.*

## DISCUSSION

### I PROXIMATE CAUSATION UNDER RICO

 Oki filed suit pursuant to RICO § 1964(c), which provides that "[a]ny person injured in his business or property by

reason of a violation of section 1962[1] of this chapter may sue therefor ... and shall recover threefold the damages he sustains." 18 U.S.C. § 1964(c). Section 1964(c) contains a causation requirement: A plaintiff must show that the defendant's RICO violation was not only a "but for" cause of his injury, but that it was a proximate cause as well. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268–69, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1311(9th Cir.1992). A proximate cause is not the same thing as the sole cause. *Cox v. Admin. United States Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir.1994). Instead, the proximate cause of an injury is "a substantial factor in the sequence of responsible causation." *Id.* (internal quotation omitted). Some "direct relationship" between the injury asserted and the injurious conduct is necessary. *Holmes*, 503 U.S. at 269, 112 S.Ct. 1311.

In *Holmes*, for example, Securities Investor Protection Corporation ("SIPC") alleged that Holmes conspired in a stock manipulation scheme that bankrupted two stock brokers and prevented them from meeting obligations to their customers, thus triggering SIPC's statutory duty to advance funds to reimburse those customers. 503 U.S. at 271, 112 S.Ct. 1311. The Supreme Court held that Holmes's acts did not proximately cause SIPC's loss. While Holmes's acts caused the stock brokers' bankruptcy, only the bankruptcy caused the losses suffered by the customers and hence by the SIPC. *Id.* Thus, Holmes's acts may have been a "but for" cause of the SIPC's loss, but they were not a proximate cause because there was no direct relationship between Holmes's alleged conduct and SIPC's asserted injury. *Id.*

Following the Supreme Court's reasoning in *Holmes*, we determined that proximate cause was lacking in *Imagineering*, 976 F.2d at 1312. In that case, the defendant allegedly defrauded prime contractors out of specified projects, thereby depriving the plaintiffs (those prime contractors' minority—and women-owned subcontractors) of profits they would have earned on those projects. *Id.* We concluded that the defendant's scheme directly harmed only the prime contractors, whereas it was the inability of the injured prime contractors to secure the contracts that directly caused the plaintiff-subcontractors' injuries. *Id.* Unable to show a direct relationship between their injuries and the defendant's conduct, the plaintiff-subcontractors could not demonstrate sufficient proximate causation to state a claim. In this case, Oki seeks to hold Wells Fargo liable for the theft of its semiconductors. If Tran's alleged malfeasance were the proximate cause of Oki's loss, *Tran* would be liable to Oki. Only if Tran is liable for Oki's loss would we additionally consider whether Wells Fargo was also liable under the doctrine of respondeat superior.

■ Oki alleged that Tran violated RICO by "associat[ing] with an enterprise engaged in theft, transportation, and sale of stolen computer chips in interstate and foreign commerce." Oki further alleged that "[Tran] participated both directly and indirectly in the conduct of the enterprise's affairs through a pattern of racketeering." Oki did not suggest that Tran participated

---

1. In this case Oki alleged an underlying violation of § 1962(c). That section proscribes acts by which "any person employed by or associated with any enterprise engaged in ... interstate or foreign commerce ... conduct[s] or participate[s], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

in the theft of its computer chips; rather, Oki complained that Tran used her "training and position as a Wells Fargo employee to conduct and facilitate numerous transactions" and "to convert and transfer the [Conspiracy's] co-mingled funds in order to avoid detection by law enforcement." In short, Oki alleged that Tran acted as the Conspiracy's financial mastermind and bookkeeper. To support these allegations, Oki recounted numerous financial transactions that Tran executed while employed at Wells Fargo, including deposits, transfers, and withdrawals of money for various Conspiracy members and Conspiracy-controlled fictitious corporate entities.

In a tenuous way, Tran's participation in the Conspiracy might be considered a "but for" cause of Oki's loss: But for Tran's ability to establish sham bank accounts and launder the proceeds of the Conspiracy's thefts, the Conspiracy may not have undertaken to steal Oki's semiconductors. However, this type of speculative "but for" causation is insufficient to state a RICO violation.

■ RICO liability requires a direct and proximate causal relationship between the asserted injury and the alleged misconduct, which we find absent in this case. Although Oki alleged that Tran used her "training and position as a Wells Fargo employee to conduct and facilitate numerous transactions" and "to convert and transfer the [Conspiracy's] co-mingled funds in order to avoid detection by law enforcement," these allegations suggest, at most, that Tran laundered the proceeds *after* the Conspiracy stole the semiconductors and sold them. Indeed, Tran's financial wizardry, as alleged by Oki, lacks any "direct relationship" to the armed robbery at Oki's semiconductor manufacturing plant.

The direct and proximate cause of Oki's loss was not Tran's money laundering at Wells Fargo; it was theft. Only after the theft occurred and the semiconductors were sold could Tran launder the proceeds. Her role in the Conspiracy, while important, was not a "substantial factor in the sequence of responsible causation." *Cox*, 17 F.3d at 1399. Thus, even reading the complaint in the light most favorable to Oki, we conclude that none of the allegations suggests that Tran directly and proximately caused Oki's loss.

That Tran knew about the robbery or indirectly provided support for it (or theoretically, that she packed sandwiches to feed the thieves) does not mean her actions at Wells Fargo directly caused the theft. In the end, Oki simply cannot demonstrate that Tran's money laundering proximately caused the robbery. Therefore, Tran is not liable for Oki's loss, and consequently, as a matter of law, Wells Fargo cannot be liable for Tran's money laundering shenanigans.

## II VICARIOUS LIABILITY

While Tran's money laundering did not proximately cause Oki's loss, the acts of Tran's conspirators did proximately cause that loss. Oki argues that because Tran was involved in a RICO conspiracy, she is liable to Oki for the activities of her conspirators, even those activities in which she did not directly participate. Thus, Oki continues, because Tran is liable for the actions of her RICO conspirators, Wells Fargo is vicariously liable under the doctrine of respondeat superior.

■ Section 1962(d) proscribes a conspiracy to violate RICO. It provides: "It shall be unlawful for any person to conspire to violate any of the [other RICO] provisions." 18 U.S.C. § 1962(d). It is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to

prove any substantive RICO violations ever occurred as a result of the conspiracy. *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1562 (1st Cir.1994). The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved. *Id.* If a RICO conspiracy is demonstrated, "[a]ll conspirators are liable for the acts of their co-conspirators." *Sec. Investor Prot. Corp. v. Vigman*, 908 F.2d 1461, 1468(9th Cir.1990) *rev'd on other grounds sub nom. Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (internal quotations and citations omitted). Holding RICO conspirators jointly and severally liable for the acts of their co-conspirators reflects the notion that the damage wrought by the conspiracy "is not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *Vigman*, 908 F.2d at 1468.

Reading the complaint most favorably to Oki, we assume Tran entered into a conspiracy to violate RICO. Only by alleging a RICO conspiracy, as Oki sought leave to do in district court, could Oki hold *Tran* liable for her co-conspirators' acts which proximately caused Oki's loss. Such black letter conspiracy law concerning *Tran's* liability, however, sheds little light on whether *Wells Fargo* is vicariously liable to the same extent that Tran is liable for the acts of her co-conspirators. We now address that question of first impression in this Circuit.

■ Oki asserts that Wells Fargo is liable to the same extent as Tran under a respondeat superior theory of vicarious lia-

bility. Respondeat superior is a form of strict liability. It represents the sentiment that it is unjust to permit an "employer to gain from the intelligent cooperation of others without being responsible for the mistakes, the errors of judgment and the frailties of those working" for it. *Petro–Tech, Inc. v. W. Co. of N. Am.*, 824 F.2d 1349, 1358 (3d Cir.1987).

■ "[R]espondeat superior may be applied under RICO." *Brady v. Dairy Fresh Prods. Co.*, 974 F.2d 1149, 1153(9th Cir.1992); *see also Quick v. Peoples Bank*, 993 F.2d 793, 797 (11th Cir.1993). Under RICO, however, respondeat superior liability attaches only if an employer benefitted from its employee's RICO violation. *Brady*, 974 F.2d at 1154–55 ("We hold that an employer that is benefitted by its employee or agent's violations of section 1962(c) may be held liable under the doctrine[ ] of respondeat superior . . . ."); *see also Davis v. Mut. Life Ins. Co.*, 6 F.3d 367, 379(6th Cir.1993). This requirement ensures that when employers are the "victims" of racketeering activity, they incur no RICO liability.[2] *Petro–Tech*, 824 F.2d at 1359–60; G. Robert Blakey, *The RICO Civil Fraud Action in Context: Reflections on Bennett v. Borg*, 58 Notre Dame L.Rev. 237, 323 (1982).

■ If an employer benefitted from its employee's RICO violation, traditional principles of respondeat superior determine whether the employer is liable for the acts of its employees. In general, an employer will be vicariously liable based on the doctrine of respondeat superior if its employee's acts were committed within

---

**2.** Respondeat superior liability is generally inappropriate under § 1962(c) when the RICO enterprise and the employer are not distinct. *Brady*, 974 F.2d at 1154; *Landry v. Air Line Pilots Assn.*, 901 F.2d 404, 425 (5th Cir.1990); *Petro–Tech*, 824 F.2d at 1358–60. In this case, however, the employer, Wells Fargo, and the RICO enterprise, the Conspiracy, are distinct entities, so respondeat superior remains available to Oki as a theory of liability.

the course and scope of her employment.[3] Restatement (Second) Agency § 219 (1958). Within the course and scope of employment means: (1) the conduct occurred substantially within the time and space limits authorized by the employment; (2) the employee was motivated, at least in part, by a purpose to serve the employer; and (3) the act was of a kind that the employee was hired to perform.[4] *Id.* at § 228; *see also Fearing v. Bucher*, 328 Or. 367, 977 P.2d 1163, 1166 (Or.1999) (allowing vicarious liability suit against The Archdiocese of Portland for sexual abuse committed by a priest); *Lourim v. Swensen*, 328 Or. 380, 977 P.2d 1157, 1159–60 (Or.1999) (allowing vicarious liability suit against the Boy Scouts for sexual abuse committed by a Boy Scout leader).

This possibility of respondeat superior liability for an employee's RICO violations encourages employers to monitor closely the activities of their employees to ensure that those employees are not engaged in racketeering. *Brady*, 974 F.2d at 1155. It also serves to compensate the victims of racketeering activity. *Id.* Vicarious liability based on the doctrine of respondeat superior thereby fosters RICO's deterrent and compensatory goals.

Here, Oki alleged that Tran violated RICO § 1962(d) by conspiring to commit RICO violations. The conspiratorial agreement itself was the alleged RICO violation. In fact, only by alleging Tran's participation in a RICO conspiracy might Oki hold Tran (and thus Wells Fargo) liable for its loss. Thus, to state a claim against Wells Fargo based on respondeat superior liability, Oki must sufficiently allege that Tran's entry into the offending agreement benefitted Wells Fargo and that she entered into that agreement within the course and scope of her employment.

While Oki sufficiently alleged that Tran's RICO conspiracy benefitted Wells Fargo, Oki cannot allege that Tran *entered* into the RICO conspiracy within the course and scope of her employment. In fact, Oki's complaint reveals no facts whatsoever about the making of the underlying conspiratorial agreement. Oki alleged only that Tran *laundered* the proceeds of the Conspiracy's thefts "while acting within the course and scope of her employment ... using the training, offices, and other instrumentalities of her employment." This allegation, however, deals with Tran's money laundering adventures, which as discussed in Part I did not proximately cause Oki's loss; it does not touch upon Tran's entry into a conspiracy to violate

---

3. The Eleventh Circuit has adopted a test whereby an employer may be vicariously liable for the wrongful acts of its "managerial" or "supervisory" agents (*e.g.* a bank manager in *Quick*) when those acts: (1) are related to and committed within the course and scope of employment; (2) are committed in furtherance of the employer's business; and (3) are authorized or subsequently acquiesced in by the employer. 993 F.2d at 797 (citing 10 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 4942 (1986)). *See also* 5 Robert L. Haig, *Business and Commercial Litigation in the Federal Courts* § 71.10 (1998) (referencing *Quick* for the elements of vicarious liability). In most instances, applying the *Quick* test yields the same result as the test for vicarious liability announced above. If we applied the *Quick* test in the present case, Oki would not state a cause of action because Tran's agreement to violate RICO did not occur within the course and scope of her employment.

4. Oregon law is instructive to the extent it helps delineate the "traditional respondeat superior and agency principles." *Brady*, 974 F.2d at 1153. *Cf. Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 755, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (acknowledging that state law may be instructive in applying traditional respondeat superior principles to a federal sexual harassment claim).

RICO in violation of § 1962(d). In addition, conspiring to violate RICO was outside the course and scope of Tran's employment because it was not the kind of function Wells Fargo hired her to perform. Indeed, such activity was well beyond her job description as a bank teller. As Tran did not conspire to violate RICO within the course and scope of her employment, Wells Fargo is not vicariously liable for Tran's conduct. No amendment to Oki's complaint would cure this fatal flaw.

Essentially, Oki asks us to craft a rule holding an employer strictly liable for the conduct of its employees' RICO co-conspirators, even if those employees did not participate directly in the conduct which proximately caused loss. Oki's proposed rule would, for example, subject unwitting law firms to RICO liability when clever administrative assistants launder money through a client's trust fund account. We decline Oki's invitation to create such a mischievous new rule. As it stands, respondeat superior balances the benefits an employer receives from an employee against the liabilities an employer incurs as a result of its employee's actions. An employer can minimize its liability by closely monitoring its employee to ensure that she commits no transgressions during the course of her employment. An employer, however, reaps no benefits from non-employee RICO conspirators, and it cannot monitor their activities to ensure compliance with the law. To extend an employer's liability to cover the acts of non-employee RICO conspirators would demolish the equitable balance the doctrine of respondeat superior seeks to achieve.

## III NEGLIGENCE

 The district court dismissed Oki's claims that Wells Fargo was negligent in (1) hiring, retaining, and promoting Tran when it knew or should have known that Tran was involved in criminal activities; (2) supervising Tran; (3) failing to detect Tran's suspicious transactions; and (4) allowing Tran signatory rights on personal and corporate bank accounts. To state a negligence claim under Oregon law, Oki must allege that: (1) Wells Fargo's conduct caused a foreseeable risk of harm; (2) the risk was to an interest of a kind that the law protects against negligent invasion; (3) Wells Fargo's conduct was unreasonable in light of the risk; (4) the conduct was the cause of Oki's harm; and (5) Oki was within the class of persons and Oki's injury was within the general type of potential incidents and injuries that made Wells Fargo's conduct negligent. *See Graham v. Multnomah County*, 158 Or. App. 106, 972 P.2d 1215, 1216 (Or.Ct.App. 1999) (citing *Solberg v. Johnson*, 306 Or. 484, 760 P.2d 867, 870 (Or.1988). Oki is unable to meet the foreseeability element. As a matter of law, an armed robbery in Oregon is simply not a reasonably foreseeable result of Wells Fargo's alleged failure to curtail Tran's money laundering in California.

## IV LEAVE TO AMEND

Oki suggests that given the chance it might plead additional facts demonstrating that Tran was a member of a conspiracy. As discussed above, however, even assuming that Tran conspired to violate RICO, Wells Fargo is not vicariously liable because Tran did not enter that conspiracy within the course and scope of her employment. Additionally, Oki enigmatically reveals that "documentary evidence has been produced by Wells Fargo that sheds some light on [the] direct claim of negligent supervision and retention." Under no circumstance, however, can Oki overcome the fact that even if Wells Fargo knew Tran was laundering money, it was not foreseeable that Tran's money laundering in Cali-

fornia would result in an armed robbery of Oki's manufacturing plant in Oregon.

## CONCLUSION

We affirm the district court's dismissal of Oki's complaint.

AFFIRMED.