[No. C044943. Third Dist. June 28, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL GRADY HIGH, Defendant and Appellant.

1194

## COUNSEL

William Davies, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, J. Robert Jibson and Judy Kaida, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DAVIS, Acting P. J.**—Defendant Daniel Grady High had a series of encounters with the Chico police, the Butte County Sheriff's Department, and the Butte Interagency Narcotics Task Force between February 2002 and January 2003. He pleaded no contest to receiving stolen property (Pen. Code, § 496, subd. (a)—count 4B) in case No. CM016824; no contest to second degree burglary of a vehicle (Pen. Code, § 459—count 1C) in case No. CM017853; no contest to manufacturing methamphetamine (Health & Saf. Code, § 11379.6, subd. (a)—count 1A) in case No. CM018323; and no contest to possession of methamphetamine for sale (Health & Saf. Code, § 11378— count 2D) in case No. CM018439, and admitted he was on bail at the time of the last offense (Pen. Code, § 12022.1).[1]

On July 7, 2003, the trial court sentenced defendant in all four cases. It imposed a total prison sentence of 11 years and imposed various fees, fines, and penalties. On appeal, defendant asks that we (1) correct clerical errors in the abstract of judgment; and (2) strike the state surcharge (Pen. Code, § 1465.7) on count 1C and the state court facilities construction penalty (Gov. Code, § 70372) on counts 1A and 1C because they violate the ex post facto clauses of the federal and state Constitutions. We shall do so and affirm the judgment as modified.

### DISCUSSION

#### I. *Prohibitions Against Punishments Imposed Ex Post Facto*

In the context before us, a prohibited ex post facto law is a retrospective statute that increases a punishment beyond that applicable at the time the crime was committed. In *Stogner v. California* (2003) 539 U.S. 607 [156 L.Ed.2d 544, 123 S.Ct. 2446], the United States Supreme Court explained that the United States Constitution's ex post facto clause prohibits the federal

---

[1] We use the alpha suffixes set forth in the abstract of judgment for clarity.

government and the states "from enacting statutes with 'manifestly unjust and oppressive' retroactive effects." (539 U.S. at p. 610 [156 L.Ed.2d at p. 551], italics omitted, citing *Calder v. Bull* (1798) 3 U.S. (3 Dallas) 386, 391 [1 L.Ed. 648].) "Each time a statute has been challenged as being in conflict with the constitutional prohibitions against bills of attainder and ex post facto laws, it has been necessary to determine whether a penal law was involved, because these provisions apply only to statutes imposing penalties." (*Trop v. Dulles* (1958) 356 U.S. 86, 95–96 [2 L.Ed.2d 630, 78 S.Ct. 590], fns. omitted.)

■ In 1990, in *Collins v. Youngblood,* the United States Supreme Court described a three-part test for determining whether a law is penal in nature. Quoting *Beazell v. Ohio* (1925) 269 U.S. 167 [70 L.Ed. 216, 46 S.Ct. 68], the court stated: " 'It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; *which makes more burdensome the punishment for a crime, after its commission,* or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.' " (*Collins v. Youngblood* (1990) 497 U.S. 37, 42 [111 L.Ed.2d 30, 110 S.Ct. 2715], quoting *Beazell, supra,* 269 U.S. at pp. 169–170, italics added.)

■ In *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 295–297 [279 Cal.Rptr. 592, 807 P.2d 434], the California Supreme Court concluded that article I, section 10, clause 1 of the United States Constitution provides the same protection from ex post facto laws as article I, section 9 of the California Constitution, and adopted the *Collins/Beazell* test in California. (See also *People v. McVickers* (1992) 4 Cal.4th 81, 84 [13 Cal.Rptr.2d 850, 840 P.2d 955] (*McVickers*).)

In *People v. Rivera* (1998) 65 Cal.App.4th 705, 708–709 [76 Cal.Rptr.2d 703] (*Rivera*), we cited the "more burdensome" test to hold that a booking fee and a jail classification fee (Gov. Code, § 29550.2, subd. (a)) did not run afoul of the prohibition against ex post facto laws. We explained, "In assessing whether a statute imposes punishment, we inquire (1) whether the Legislature intended the sanction to be punitive and, if not, (2) whether the sanction is so punitive in effect as to prevent the court from legitimately viewing it as regulatory or civil in nature, despite the Legislature's intent." (*Rivera,* at p. 709.) " 'The first part of the test ("intent") looks solely to the declared purpose of the legislature as well as the structure and design of the statute. [Citations.] The second part of the test ("effects") requires the party challenging the statute to provide "the clearest proof" that the statutory scheme is so punitive either in purpose or effect as to negate the State's

nonpunitive intent. [Citations.]' " (*Id.* at p. 710, quoting *Russell v. Gregoire* (9th Cir. 1997) 124 F.3d 1079, 1087.)

## II. *Penal Code Section 1465.7 and Government Code Section 70372*

The parties agree that Penal Code section 1465.7 (state surcharge on fines) became effective after the date defendant committed the offense charged in count 1C, and that Government Code section 70372 (state court facilities construction penalty) became effective after the dates defendant committed the offenses charged in counts 1A and 1C.[2] The Attorney General correctly concedes that imposition of the Penal Code section 1465.7 $2 state surcharge on fines for the theft-related offense in count 1C violates state and federal constitutional protections against statutes that make the punishment for a crime more burdensome after its commission. As Justice Mosk observed in *McVickers*, "Commonly understood definitions of punishment are intuitive: there is little dispute that additional jail time or extra fines are punishment." (*McVickers, supra,* 4 Cal.4th at p. 84.) The surcharge mandated by Penal Code section 1465.7, like its companion penalty assessment set forth in section 1464, is a "garden variety" fine calculated on the size and severity of the base fine imposed. It does not purport to reimburse government for an expense incurred. Rather, the revenue collected is deposited in the State General Fund.

The Attorney General contends that imposition of the Government Code section 70372 state court facilities construction penalty in counts 1A and 1C is not similarly barred. Citing our opinion in *Rivera,* the Attorney General maintains that the state court facilities construction penalty "is more in the nature of a user fee than a penalty for criminal behavior." We therefore focus our discussion on Government Code section 70372.

---

[2] Penal Code section 1465.7 provides, in relevant part: "(a) A state surcharge of 20 percent shall be levied on the base fine used to calculate the state penalty assessment as specified in subdivision (a) of Section 1464. [¶] (b) This surcharge shall be in addition to the state penalty assessed pursuant to Section 1464 of the Penal Code and may not be included in the base fine used to calculate the state penalty assessment as specified in subdivision (a) of Section 1464." The Legislature enacted Penal Code section 1465.7 in 2002 as urgency legislation effective September 30, 2002. (See statutory history, 51A West's Ann. Pen. Code (2004 supp.) foll. § 1465.7, p. 58; Stats. 2002, ch. 1124, §§ 46, 63.)

Government Code section 70372, subdivision (a), provides, in relevant part: "[T]here shall be levied a state court construction penalty, in addition to any other state or local penalty . . . , in an amount equal to five dollars ($5) for every ten dollars ($10) or fraction thereof, upon every fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses . . . ." Enacted in 2002, Government Code section 70372 became effective January 1, 2003. (Stats. 2002, ch. 1082, § 4.)

In count 1A defendant was charged with manufacturing methamphetamine on December 10, 2002. In count 1C defendant was charged with burglarizing a vehicle on June 17, 2002.

The Legislature enacted Government Code section 70372 as part of the Trial Court Facilities Act of 2002. (Stats. 2002, ch. 1082, § 4 (Sen. Bill No. 1732 (2001–2002 Reg. Sess.).) The Lockyer-Isenberg Trial Court Funding Act of 1997 (the 1997 Act) had shifted funding of trial courts from counties to the state in order to provide a more stable funding source for trial court operations. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1732 (2002 Reg. Sess.) as amended Apr. 11, 2002, p. 1 (Judiciary Com. Analysis).) The 1997 Act also created a Task Force on Court Facilities (the Task Force) that was asked to review the status of court facilities and recommend how to allocate funding responsibilities for maintenance and construction between counties and the state. (*Ibid.*)

The Trial Court Facilities Act of 2002 was the first of what was expected to be a series of bills to implement the recommendations of the Task Force. (Judiciary Com. Analysis, *supra,* p. 2.) Senate Bill No. 1732 created a new fund, the Court Facilities Trust Fund, for the deposit of county payments for the operation and maintenance of court facilities transferred to the state. The fund would also be a source of funding to implement Task Force recommendations regarding repair, renovation, modification, and construction of court facilities. (*Id.,* p. 3.) According to the staff analysis, the projected average cost of court facilities renovation, remodeling, expansion and construction would be $384.6 million per year for the next 10 years. (*Id.,* p. 7.) Senate Bill No. 1732 proposed increases in fees, fines and penalties imposed in both civil and criminal proceedings to fund the needed construction. (*Id.,* pp. 3–4, 7; see Gov. Code, §§ 70372, 70373, 70373.5.) The new penalties would "supplant existing penalties now authorized by statute for counties to collect." (Judiciary Com. Analysis, *supra,* p. 9.)

■  Although the Legislature enacted Government Code section 70372 as a method of increasing the funds available to remodel, renovate and construct new state court facilities, the structure, operative principle, and descriptive language chosen reflect a penal purpose as well.

■  The state court facilities construction penalty is not simply a "user fee" as argued by the Attorney General. If it were a user fee, there would be a rational relationship between the amount of the assessment and the extent of the individual defendant's use. Unlike the booking fee and jail classification fee in *Rivera,* which were based on actual administrative costs, the state court facilities construction penalty is calculated on "every fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses" at the rate of $5 for every $10. The penalty imposed tracks the seriousness of the underlying offense and its base penalty. The prospect of its imposition therefore has a similar deterrent effect to that of punitive statutes generally. It thereby " 'promote[s] the traditional aims of punishment—retribution and deterrence.' " (*Rivera, supra,* 65 Cal.App.4th at p. 710; see, e.g., Health & Saf.

Code, § 11352.5; Pen. Code §§ 243.4, 308, 11413; Veh. Code, § 23566, subds. (a), (b).) In contrast, the Government Code section at issue in *Rivera* expressly linked the booking and jail classification fees to the actual administrative costs incurred in booking and processing those who are arrested and convicted. We characterized it as "[i]n effect, . . . an administrative 'user' fee." (*Rivera, supra,* 65 Cal.App.4th at p. 711.)

The descriptive language the Legislature chose for the court facilities construction penalty also confirms a punitive as well as a fundraising purpose behind the statute. The Legislature designated the Government Code section 70372 assessment a "penalty." (Gov. Code, § 70372, subd. (a).) The root word, "penal," means "of or relating to punishment or retribution." (Garner, Dict. of Modern Legal Usage (2d ed. 1995) p. 647, col. 2.) The American Heritage Dictionary defines "penalty" as "[a] punishment established by law or authority for a crime or offense." (American Heritage Dict. (2d college ed. 1982) p. 916, col. 2.)

In contrast, the Legislature designated the booking fee and jail classification fees at issue in *Rivera* as "fees." (Gov. Code, § 29550.2, subd. (a).) A "fee" is defined simply as "[a] fixed charge." (American Heritage Dict., *supra,* p. 495, col. 1.)

Since we have concluded that the Legislature intended the penalty mandated by Government Code section 70372 to be punitive as well as a source of money for the construction of court facilities, it is unnecessary to address whether the sanction is so punitive in effect as to prevent us from legitimately viewing it as regulatory or civil in nature. We will strike the $2 state surcharge imposed on defendant in count 1C and the $5 state court facilities construction penalty imposed in counts 1A and 1C. Because the probation department failed to differentiate between the penalty recommended in count 1A and count 2D, and the trial court neglected to correct that omission when it imposed the Government Code section 70372 penalty at sentencing, we will remand the cause to allow the trial court to identify the precise amount to be stricken in count 1A.

III. *Clerical Errors in the Abstract of Judgment*

Defendant pleaded no contest to manufacturing methamphetamine in violation of Health and Safety Code section 11379.6, subdivision (a), in what became count 1A in case No. CM018323, and no contest to possessing methamphetamine for sale in violation of Health and Safety Code section 11378 in what became count 2D in case No. CM018439. The abstract of judgment incorrectly shows defendant convicted of violating Health and Safety Code section 11379, subdivision (a), in count 1A and Health and Safety Code section 11838 in count 2D.

There is also an error in the manner in which the trial court handled the monetary assessments in this case. Instead of reading the separate fines, fees, penalties and surcharges into the record at sentencing, the court simply stated: "The court will impose a theft fine pursuant to [Penal Code section ]1202.5 payable to Butte County Sheriff's Office in the sum of $34. The court will impose a criminal laboratory analysis fee in the total sum of $510, a drug program fee, together with surcharges and penalties in the total sum of $1,530, a clandestine drug lab fine, together with penalties, assessments and surcharges totaling $1,700." The minute order lists the $1,530 *sum* as a drug program fee. (Health & Saf. Code, § 11372.7.) Both the minute order and the abstract of judgment designate the $1,700 assessment as a clandestine drug lab fine. (Health & Saf. Code, § 11379.6, subd. (a).)

■ Although we recognize that a detailed recitation of all the fees, fines and penalties on the record may be tedious, California law does not authorize shortcuts. All fines and fees must be set forth in the abstract of judgment. (*People v. Sanchez* (1998) 64 Cal.App.4th 1329, 1332 [76 Cal.Rptr.2d 34] [laboratory fee]; *People v. Hong* (1998) 64 Cal.App.4th 1071, 1080 [76 Cal.Rptr.2d 23] [restitution fine].) The abstract of judgment form used here, Judicial Council form CR-290 (rev. Jan. 1, 2003) provides a number of lines for "other" financial obligations in addition to those delineated with statutory references on the preprinted form. If the abstract does not specify the amount of each fine, the Department of Corrections cannot fulfill its statutory duty to collect and forward deductions from prisoner wages to the appropriate agency. (*Hong, supra,* 64 Cal.App.4th at pp. 1078–1079.) At a minimum, the inclusion of all fines and fees in the abstract may assist state and local agencies in their collection efforts. (Pen. Code, § 1205, subd. (c).) Thus, even where the Department of Corrections has no statutory obligation to collect a particular fee, such as the laboratory fee imposed under Health and Safety Code section 11372.5, the fee must be included in the abstract of judgment. (*Sanchez, supra,* 64 Cal.App.4th at p. 1332.) As the *Sanchez* court explained, "Just as a ' "[r]ose is a rose is a rose is a rose[]" ' . . . (Gertrude Stein, Sacred Emily (1913)[])' (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 459 [256 Cal.Rptr. 766, 769 P.2d 948] (conc. opn. of Eagleson, J.)), a fine is a fine is a fine is a fine and is part of the judgment which the abstract must ' "digest or summarize." ' [Citations.]" (*Sanchez, supra,* 64 Cal.App.4th at p. 1332.)

"Courts may correct clerical errors at any time, and appellate courts . . . that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [109 Cal.Rptr.2d 303, 26 P.3d 1040].) Accordingly, we shall direct the trial court to correct the cited clerical errors.

## DISPOSITION

The judgment is modified to strike the state surcharge and state court facilities construction penalty imposed in count 1C and the state court facilities construction penalty imposed in count 1A. The cause is remanded with directions to the trial court to: (1) identify the amount of the state court facilities construction penalty to be stricken in count 1A; (2) separately list, with the statutory basis, all fines, fees and penalties imposed on each count; and (3) correct the clerical errors in recording the offenses of which defendant was convicted in counts 1A and 2D. The judgment is affirmed as modified. The trial court is directed to prepare an amended abstract reflecting the modifications and corrections ordered by this court and to forward a certified copy of the abstract to the Department of Corrections.

Robie, J., and Butz, J., concurred.