Lawrence R. MOYER, Plaintiff–Appellant,

v.

Edward S. ALAMEIDA, Jr., et al., Defendants–Appellees.

No. 04–16145.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 17, 2006.

Decided June 9, 2006.

---

* The Honorable Marilyn L. Huff, Chief United States District Judge for the Southern District of California, sitting by designation.

Warrington S. Parker, III, Esq., David A. Thomas, Esq., Heller Ehrman, LLP, San Francisco, CA, for Plaintiff–Appellant.

Lawrence Raymond Moyer, Folsom, CA, pro se.

* The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36–3.

Constance Picciano, Esq., AGCA–Office of the California Attorney General (SAC) Department of Justice, Sacramento, CA, for Defendants–Appellees.

Before: NOONAN and HAWKINS, Circuit Judges, and REED,* District Judge.

## MEMORANDUM **

Appellant Lawrence R. Moyer ("Moyer" or "Appellant") appeals the district court's dismissal of his claim that imposition of a fee on top of garnishment of prison wages—where the fee is a 10% surcharge on the garnished amount—is a violation of the Ex Post Facto Clause.[1] Because we agree that Moyer has pleaded a colorable ex post facto claim, we reverse the District Court's dismissal of Moyer's complaint and remand for further proceedings.

## I. Background

The core of the matter before us is a 1994 amendment to a California law that imposed an additional fee on prisoners whose prison wages and trust account deposits are garnished to pay off restitution fines. The fee existed within California Penal Code section 2085.5 prior to the 1994 amendment, but was deducted from the payment after the balance of the prisoner's outstanding fine was credited:

1. Moyer also argued that the fee was a violation of the Takings Clause. Because we reverse on the ground that Moyer has pled a colorable ex post facto claim, we do not address the takings claim.

In any case in which a prisoner owes a restitution fine ... the Director of Corrections shall deduct a reasonable amount ... from the wages of the prisoner and shall transfer that amount, *less a 10–percent administrative fee, which shall be retained by the director*, to the State Board of Control for deposit in the Restitution Fund.... *Any amount so deducted shall be credited against the amount owing on the fine....*

Cal. Stats.1992, c. 1091, § 1 (emphasis added).

Since passage of the 1994 amendment, the fee is deducted before the balance of his outstanding fine is credited. As amended in 1994, California Penal Code section 2085.5(c) reads as follows:

*The director shall deduct and retain from the wages and trust account deposits of a prisoner*, unless prohibited by federal law, *an administrative fee that totals 10% of any amount transferred to the State Board of Control* pursuant to subdivisions (a) or (b) of section 13967 of the Government Code.... The director shall deposit the administrative fee moneys in a special deposit account for reimbursing administrative and support costs of the restitution program of the Department of Corrections. The director, at his or her discretion, may retain any excess funds in the special deposit account for future reimbursement of the department's administrative and support costs for the restitution program or may transfer all or part of the excess funds for deposit in the restitution fund.

Cal. Stats.1994, c. 634, § 1 (emphasis added).

Because the 1994 amendment shifted the fee to the prisoner, Moyer's restitution fine payments have increased by 10%.[2] In other words, the California Department of Corrections ("CDC") now garnishes $110 to pay off $100 of Moyer's fine. While the individual fees assessed against Moyer with each garnished payment are roughly $0.40 to $0.58, the total fee amount he will incur by the time he pays off his fine of $5,000 will be around $500,[3] which is roughly equivalent to sixteen months of his prison wages of $29 per month. Moyer argues that, because section 2085.5(c) effectively increases his restitution fine by 10%, it is an ex post facto fine increase, in violation of Article I, § 10, of the United States Constitution. The District Court disagreed and dismissed Moyer's complaint for failure to state a claim under 28 U.S.C. § 1915A. On appeal, the CDC argues that section 2085.5(c) is purely administrative and raises no ex post facto violation.

## II.  Standard of Review

"This court reviews de novo a district court's dismissal of a complaint under 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir.2000). In reviewing dismissal for failure to state a claim, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 772 (9th Cir.2002).

**2.** Because this is an appeal from a dismissal on the pleadings, we assume that Moyer has no sources of substantial income aside from his prison wages.

**3.** Moyer's original restitution fine was $5,000, which implies a total administrative fee of $500. According to the record, Moyer had paid off $425.78 of his fine prior to June 2003. The record does not state how much of his fine Moyer had paid prior to 1994. Accordingly, it is not possible to determine from the record the total amount of fees that Moyer will pay.

## III.  Analysis

The Ex Post Facto Clause prohibits the states from enacting any law " 'which imposes a punishment for an act that was not criminal at the time it was committed, or imposes additional punishment for a crime to that then prescribed.' " *Russell v. Gregoire,* 124 F.3d 1079, 1083 (9th Cir.1997) (quoting *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). For a statute to be prohibited as an ex post facto law, it must be both retroactive and punitive. *See Weaver,* 450 U.S. at 29, 101 S.Ct. 960.

### A.  Retroactivity

The retroactivity of section 2085.5(c) is self-evident. A statute is retroactive if it "applies to prisoners convicted for acts committed before the provision's effective date." *See Weaver,* 450 U.S. at 31, 101 S.Ct. 960. Moyer was convicted for an act that was committed prior to 1987, so any application of the 1994 amendment to his restitution fine is retroactive.

### B.  Punitive nature under the intent-effects test

The standard for addressing whether a legislative amendment is punitive is the "intent-effects" test. *Russell,* 124 F.3d at 1084 (citing *United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996)). The primary question under the "intent-effects" test is whether the legislature intended the statute to be punitive or civil. *See Smith v. Doe I,* 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). "If the intention of the legislature was to impose punishment, that ends the inquiry." *Id.* If, however, the intention was to enact "a regulatory scheme that is civil and non-punitive," the court must further examine whether the statutory scheme is "so punitive either in purpose or effect as to negate the [the legislature's] intention to deem it

civil." *Id.* (citation and quotation marks omitted).

Whether an "administrative fee" attached to a restitution fine is punitive under the Ex Post Facto Clause is a question of first impression within the Federal Courts. The closest this circuit has come to deciding an issue like the one presented here is *United States v. Baggett,* where we held that statutory amendments that eliminated the court's ability to take economic circumstances into account when setting restitution orders were punitive under the Ex Post Facto Clause where the amendments "had the potential to increase the amount of restitution [the defendants had] to pay." 125 F.3d 1319, 1322 (9th Cir. 1997). The court has also addressed fees that were allegedly administrative within the context of the Eighth Amendment in *Wright v. Riveland,* 219 F.3d 905, 915 (9th Cir.2000), where this court held that a "cost of incarceration" fee was punitive and therefore deserved Eighth Amendment scrutiny.

The apparent increase in restitution payments mandated by section 2085.5(c) immediately raises a concern of an ex post facto violation. As one California court has noted " 'commonly understood definitions of punishment are intuitive: there is little dispute that additional jail time or extra fines are punishment.' " *People v. High,* 119 Cal.App.4th 1192, 15 Cal.Rptr.3d 148, 151 (2004) (quoting *People v. McVickers,* 4 Cal.4th 81, 13 Cal.Rptr.2d 850, 840 P.2d 955, 957 (1992)). In *Russell,* this court noted that the "common thread" underlying most statutes subject to the Ex Post Facto Clause was that they *"increased the quantum* of punishment attached to an already-committed crime." 124 F.3d at 1085. Here, Plaintiff alleges that section 2085.5(c) creates a readily quantifiable increase in punishment—a 10% increase in total restitution payments. Although the

increase comes through a 10% surcharge on garnished wages, rather than a direct increase in the amount of the restitution fine, the effect is the same for prisoners whose only source of funds is prison wages.

Nonetheless, whether section 2085.5(c) is punitive is not self-evident. As discussed below, there is contradictory evidence regarding the legislature's intent in passing section 2085.5(c), and there is also evidence indicating that the fee is punitive in effect. On balance, we believe that the evidence of punitive effect is sufficient to withstand dismissal for failure to state a claim under 28 U.S.C. § 1915A.

### 1. Punitive intent

On its face, it appears that the legislature intended section 2085.5(c) to be non-punitive and civil. "Whether a statutory scheme is civil or criminal is first of all a question of statutory construction," *Smith,* 538 U.S. at 92, 123 S.Ct. 1140 (quotation marks and citation omitted), and the language of section 2085.5(c) suggests an intent to label the provision as civil. First, the statute calls the 10% surcharge an "administrative fee." Cal. Pen.Code § 2085.5(c). Second, the statute further states that the director shall deposit the "administrative fee moneys" in "a special deposit account for reimbursing administrative and support costs of the restitution program of the Department of Corrections." *Id.* The only indication of punitive intent in the language of the statute is section 2085.5(c)'s acknowledgment that excess fees may be paid into the restitution fund at the discretion of the Director of Corrections.

But a deeper analysis of section 2085.5's legislative history indicates that the legislature's real purpose in amending the statute was a desire to raise additional revenue for restitution, not administrative costs. Although the assembly bill codifying the statute stated that the fee's purpose was "reimbursing administrative and support costs of the restitution program," Cal. Legis. 634 (1994), the prior version of section 2085.5 already collected a fee to reimburse these costs. *See* Cal. Stats. 1992, c. 1091, § 1 (*supra*). Because the fee under section 2085.5 was 10% of garnished payments both before and after the 1994 amendment, the amendment did not increase reimbursement of administrative and support costs at all, which means that the 1994 amendment could not advance the stated goal.

In short, the amendment that created section 2085.5(c) had the effect of increasing funds available for restitution by 11%[4] and appears to have been passed with that goal. Committee reports discussing the 1994 amendment that created section 2085.5 note that it was passed in response to a budget shortfall. Sen. Comm. Rep. for 1993 Cal. A.B. 876, 1993–94 Regular Session, at 3 (August 18, 1994) (noting $20 million projected funding deficit and arguing that proposed amendments would increase funds available for payment of restitution to victims); Sen. Bill Analysis for 1993 Cal. A.B. 876, 1993–94 Regular Session at 2–3 (August 9, 1994) (same). By shifting the fee to prisoners and not deducting the fee from the balance of the prisoners' fines, the legislature increased funds available for restitution without having to acquire additional money through the state's general fund. This indicates that the legislature's real intent was to increase restitution payments by the prisoners.

---

4. Previously, only $90 out of every $100 in garnished wages was available for restitution. Now, $100 out of $110 is available for restitu- tion. Thus, the fee shift's increase of $10 creates an 11 percent increase over the $90 available for restitution prior to 1994.

Because the legislative history behind section 2085.5(c) contradicts the legislature's stated purpose of recouping administrative costs, we are unwilling to find that the statute was passed with non-punitive intent. Restitution may be a punitive, not civil, goal, *see United States v. Dubose,* 146 F.3d 1141, 1144–45 (9th Cir.1998), *cert. denied,* 525 U.S. 975, 119 S.Ct. 430, 142 L.Ed.2d 350 (1998), and the above analysis indicates that increasing restitution by increasing prisoner contributions was the real intent of the legislature. While we are not ready to replace the legislature's stated non-punitive intent with a finding that the statute was passed with punitive intent, we are not willing to afford the legislature's stated intent the level of deference that it might normally be due.

### 2. Punitive effect

Because the evidence of legislative intent behind section 2085.5(c) is ambiguous, we must rely more heavily on an analysis of whether the statute is punitive in effect. "[T]he *ex post facto* effect of a law cannot be evaded by giving a civil form to that which is essentially criminal." *Burgess v. Salmon,* 97 U.S. 381, 385, 24 L.Ed. 1104 (1878). Even fees labeled as "civil" are occasionally held punitive. *See, e.g., United States v. Halper,* 490 U.S. 435, 438, 448–49, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (holding $130,000 "civil" penalty to reimburse government for Medicare fraud punitive under Double Jeopardy Clause), *abrogated on other grounds by Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); *Wright,* 219 F.3d at 916 (holding "cost of incarceration" fee punitive for Eighth Amendment purposes); *People v. High,* 119 Cal.App.4th 1192, 15 Cal.Rptr.3d 148, 151–52 n. 2, (2004) (holding court construction penalty, equal to 50% of restitution fine, characterized by the state as a "user fee," punitive under the Ex Post Facto Clause).

In analyzing whether a law is punitive in effect, we refer to the seven factors noted in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *accord Smith,* 538 U.S. at 97, 123 S.Ct. 1140. The *Kennedy* factors are "neither exhaustive nor dispositive, but are useful guideposts." *Smith,* 538 U.S. at 97, 123 S.Ct. 1140 (internal quotation marks and citations omitted). The relevant factors are "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned." *Kennedy,* 372 U.S. at 168–69, 83 S.Ct. 554.

Section 2085.5(c) is not punitive under the first *Kennedy* factor because it imposes no affirmative disability or restraint.

In considering the second *Kennedy* factor, we find that fees like the one imposed by section 2085.5(c) have historically been considered punitive. The District Court concluded that, because this fee existed in a purely civil form prior to 1994, it had a non-punitive history. We believe, however, that the focus of the *Kennedy* inquiry is whether *analogous* fees have been considered punitive. *See, e.g., Kennedy,* 372 U.S. at 168, 83 S.Ct. 554 n. 23 (discussing whether deprivation of citizenship had historically been considered punitive in determining whether a law that revoked citizenship for people who fled military service was punitive). Other courts have construed "administrative" fees tacked onto restitution fines and sentences as fines and

held them to be punitive, even when the state has characterized them as "user fees." *See, e.g., Wright,* 219 F.3d at 916 (holding "cost of incarceration" fee punitive); *High,* 15 Cal.Rptr.3d at 153 (holding a court construction penalty equal to 50% of restitution fines punitive). Thus, courts have historically viewed fees like section 2085.5(c) as punitive.

The third *Kennedy* factor, scienter, indicates that the fee is civil, since 2085.5(c) does not require any scienter.

However, the fourth *Kennedy* factor, promotion of retribution and deterrence, also favors a finding that the fee is punitive. Under the District Court's view, the administrative fee does not serve retributive or deterrent functions because it is expressly designed to reimburse administrative costs. This is a reasonable conclusion, but section 2085.5(c) also encompasses collection of overflow funds for use in direct restitution, which has explicit deterrent and retributive functions. *See United States v. Snider,* 957 F.2d 703, 706–07 (9th Cir.1992). Moreover, the fee also promotes restitution to the extent that it subsidizes the restitution fund's administration, which is sufficient to establish a punitive effect. *See Wright,* 219 F.3d at 916 (noting that a "user fee" aimed at subsidizing the prison system was punitive because prisons promote deterrence and retribution); *see also United States v. Zakhor,* 58 F.3d 464, 466–67 (9th Cir.1995) (noting and adopting majority rule from Second, Seventh, and Tenth circuits finding that imposition of costs of punishment on prisoners serves a deterrent function). This leads us to the conclusion that, even if this "user fee" is intended to serve an administrative purpose, it also significantly promotes retribution and deterrence.

The fifth *Kennedy* factor, which asks whether the behavior at issue was a crime before passing of the statute, supports the conclusion that the fee imposed by section 2085.5(c) is punitive. On its face, the fee targets nonpayment of restitution fines, which is not, in itself, criminal. But since the total administrative fees are determined by the size of the restitution fine— which, in turn, is determined by the underlying crime—the "administrative fee" is arguably directed toward behavior that was a crime before passage of section 2085.5(c). *See, e.g., High,* 15 Cal.Rptr.3d at 151–52 (holding that an "administrative fee" that "tracks the seriousness of the underlying offense and its base penalty," rather than actual administrative costs, is punitive); *see also* Dubose, 146 F.3d at 1145 ("that restitution is tied to the culpability of the defendant makes it look more like punishment.") (internal quotation marks and citation omitted).

Regarding factor six, non-punitive purpose, section 2085.5(c) was enacted with the stated purpose of recouping costs associated with administration of restitution fines. This is an alternative, non-punitive purpose that suggests section 2085.5(c) is civil in nature. However, as noted above, the real effect of 2085.5(c) was to increase funds available for restitution without changing the amount of administrative fees collected. Thus, the cost-shifting portion of the amendment bears no rational relation to the legislatures' stated non-punitive purpose.

The last factor, which asks whether the fine is excessive in relation to its non-punitive purpose, requires the consideration of facts that are not available because the complaint was dismissed during the pleading stage. Moyer argues that the $500 in fees that he will pay is excessive in relation to the cost of garnishing his wages; the CDC asserts that the fee is minuscule compared to actual costs. There is no evidence on the record to support either view conclusively, but the

standard of review requires us to assume facts in the light most favorable to Moyer. *See Oki Semiconductor Co.*, 298 F.3d at 772. Accordingly, we must assume that the fee collected exceeds costs associated with garnishing Moyer's prison wages and trust account deposits and informing the sentencing court of the amount garnished, at least within the context of considering whether to dismiss for failure to state a claim. Furthermore, because cases like *Wright*, 219 F.3d at 916, and *High*, 15 Cal.Rptr.3d at 151–52, establish a tradition of treating "user fees" that exceed an appropriate estimate of cost as excessive in relation to their non-punitive purpose, we conclude that the fee collected under section 2085.5(c) exceeds its non-punitive purpose.

Ultimately, our analysis of section 2085.5(c) under the Kennedy factors leads us to find that its fee may be punitive in effect. We note that historical treatment of analogous measures and promotion of deterrence and retribution both indicate that section 2085.5(c) is punitive. Moreover, since the size of the fee tracks the underlying offense, one could argue that the underlying behavior was a crime prior to section 2085.5(c)'s enactment. Finally, in the absence of hard evidence to the contrary, the Court must assume that $500 in administrative fees is excessive in relation to the State's actual administrative costs. Whether or not the fee is definitely punitive in effect cannot be determined until evidence of the actual costs of the restitution fund's administration are compared to the fees collected by the Department of Corrections.

## IV. Conclusion

Our analysis leads us to find that Moyer has a colorable claim that the fee imposed

on prisoner's by California Penal Code section 2085.5(c) is punitive under the Ex Post Facto Clause. Therefore, we reverse the district court's dismissal and remand.

## REVERSED and REMANDED.