Filed 10/18/13  P. v. Bibbs CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

|  |  |
|---|---|
| THE PEOPLE, | C069559 |
| Plaintiff and Respondent, | (Super. Ct. No. SF116945A) |
| v. | |
| TOMMY LEE BIBBS, | |
| Defendant and Appellant. | |

A jury found defendant Tommy Bibbs guilty of:  evading an officer while operating a motor vehicle with willful or wanton disregard for the safety of persons or property (count 1; Veh. Code, § 2800.2); failing to stop at the scene of an accident with property damage (count 4; Veh. Code, § 20002, subd. (a)); driving while under the influence (DUI) of alcohol and/or drugs (count 5; Veh. Code, § 23152, subd. (a)); and driving while under the influence of amphetamine (count 6; Health & Saf. Code,

1

§ 11550, subd. (a)).  The jury also found defendant guilty of the lesser charge in count 3 of vandalism of property valued under $400, a misdemeanor.

Defendant argues that his 180-day sentence for failing to stop at the scene of an accident should have been stayed pursuant to Penal Code section 654, that $160 in fines and fees must be stricken because the court did not detail them in its oral pronouncement of sentence, and that he was entitled to an additional day of custody credit and 88 additional days of conduct credit.[1]

We shall conclude that defendant's section 654 argument is moot because the length of the sentence on count 4 was less that defendant's presentence credit, that the court included all fees and fines in its oral pronouncement, but that defendant is entitled to additional presentence credit.  We shall order to trial court to modify defendant's presentence credits, but shall otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Deputy Michael Powell of the San Joaquin County Sheriff's Office was called to a home on West Highway 4 on a report of a suspicious white station wagon parked in the driveway.  On the way to the house, he saw a vehicle matching the description he had been given parked on the side of John Turk Road, just north of Highway 4.  He passed the car then made a U-turn to pull up to it.  As he did so, the car took off.  Deputy Powell was able to identify defendant as the driver of the station wagon.  Emuna Mohammed was sitting in the passenger seat of the station wagon.

Deputy Powell followed defendant with his flashing lights and siren on. Defendant was travelling around 90 miles per hour.  The speed limit was 50 or 55 and there was other traffic in the area.  Defendant passed a car on the right that he had been tailgating.  That car moved to the right to avoid defendant, and an accident almost

---

[1]  References to a section are to the Penal Code unless otherwise indicated.

resulted. Defendant also ran a red light. There were other vehicles in the intersection, but there was no collision. Defendant continued on at a high rate of speed.

Deputy Powell called off the pursuit about a half-mile from Interstate 5 because there was no felony want on the vehicle, so there was not enough reason to continue the pursuit. Powell proceeded on to the homeowners who had called in the report of the suspicious vehicle. While there, Powell learned that defendant had been apprehended.

Defendant had crashed through a wrought iron fence and hit a pickup that had been parked in a driveway, pushing the pickup into the garage door. Deputy Powell proceeded to the scene of the crash. He saw defendant in the backseat of a California Highway Patrol vehicle. Powell interviewed Emuna Mohammed. She told Powell that defendant had been driving the car and that he was her boyfriend. Powell did not detect any odor of alcohol from Mohammed, and she showed no signs of being under the influence of alcohol.

Before the crash, Highway Patrol Officer Jackson Seymour spotted defendant in the white station wagon. He saw defendant run a red light and followed defendant onto the freeway, but did not turn on his lights and siren until defendant exited the freeway. Officer Seymour followed defendant with his lights and siren activated. He saw defendant collide with a fence and parked pickup truck. By the time he reached the white station wagon, the driver's door was open and Mohammed was sitting alone in the front seat smoking a cigarette. She told Officer Seymour that she had told defendant to stop. She gave defendant's name and date of birth as well as a physical description and a description of his clothing. Officer Seymour detected no odor of alcohol on Mohammed's breath, nor did she exhibit symptoms of intoxication. She told Officer Seymour that defendant had been using drugs. Seymour searched the vehicle, and found defendant's driver's license on the driver floorboard.

Defendant was running away on foot when he was located. He was detained, arrested, and taken to a hospital. He was gaunt and had dilated pupils. He was jittery and

3

babbling nonsense. A sample of his blood was tested and revealed methamphetamine at 300 nanograms per milliliter and amphetamine at 51 nanograms per milliliter. This was a sufficient amount to impair one's ability to drive safely.

At trial Mohammed testified that defendant was her boyfriend, that she loved him, and thought she might marry him. She further testified that, despite what she told the officers the night of the crash, defendant had not been driving. Instead, it had been someone named Joey Johnson. She did not know where Johnson lived. She looked for Johnson after the crash, but never found him. She claimed she was confused about the details of the night because she had been drinking. She claimed she did not remember telling the police that defendant had been driving the car, but if she did so it was because she was mad at defendant. She was mad at him because the day before he had trashed her car and slashed her tires and tampered with the wiring (the basis of the vandalism count).

## DISCUSSION

### I
### Penal Code Section 654 Issue is Moot

The trial court sentenced defendant to two years and eight months in prison for the felony evading an officer conviction, and imposed a concurrent six month (180 day) sentence for count 4 (hit and run driving with property damage). The trial court awarded 253 days credit for time served. We shall conclude below that defendant is entitled to 380 days of total credit.

Defendant argues that the hit and run was incidental to the felony evading conviction, and that the two counts were committed with the same criminal intent and objective, which was to flee from police. He argues that section 654 and the double jeopardy clause of the Fifth Amendment to the United States Constitution forbid multiple punishment in this instance.

4

Defendant served no sentence for the hit and run conviction after sentencing, since the court gave him credit for time served that was in excess of 180 days. Accordingly, there is no effective relief that can be afforded on appeal and the issue is moot. (See *People v. Travis* (2006) 139 Cal.App.4th 1271, 1280.)

## II
### Fines and Fees

Defendant argues for the first time on appeal that because the trial court did not orally impose $160 worth of fines, they must be stricken. He argues he did not forfeit the argument because he had no way of knowing the fines were being imposed, since they were not mentioned in the oral pronouncement. He is wrong. The fines were included in the trial court's oral pronouncement, as well as in its minute order, and he forfeited any objection to them by failing to object below.

The oral pronouncement of fines and fees detailed $220 for a restitution fine, $220 for a parole revocation fine, and "$3,220 in fines and fees on the DUI offense." The total amount of fines and fees stated orally by the court was $3660.

The minute order detailed the following fees and fines: $220 restitution fine, $220 parole revocation fine, $150 conviction assessment, $200 security fee, $190 criminal lab fee, $38 law enforcement fine, $12 medical air transportation fee, $100 restitution fine plus $10 surcharge, $2520 penalty assessment as to count 5. The total amount of these fines and fees is $3660. Defendant contests the $38 law enforcement fine, the $12 medical air transportation fee, and the $100 restitution fine plus $10 surcharge.

There is no discrepancy in the total amount. Aside from the restitution and parole revocation fines, the oral pronouncement included all remaining fines and fees in one total. It is an acceptable practice for the trial court to refer to fines and fees in a shorthand manner and leave it to the trial court clerk to specify the penalties in appropriate amounts in the minutes and the abstract. (*People v. Sharret* (2011) 191 Cal.App.4th 859, 864.) The amounts defendant contests were itemized in the abstract of

5

judgment, therefore the trial court complied with our decision in *People v. High* (2004) 119 Cal.App.4th 1192, 1200.

There was no failure on the trial court's part to orally pronounce all of the fines and fees. Defendant's complaint of error on this ground is also forfeited for failure to object. (*People v. Gibson* (1994) 27 Cal.App.4th 1466, 1468-1469.)

### III
### Credit for Time Served

The trial court awarded defendant 253 days for time served, plus 38 days of conduct credits, for a total of 291 days. The trial court applied the 15 percent conduct credit limitation pursuant to section 2933.1, which applies such limitations for violent felonies listed in section 667.5, subdivision (c). The crimes of which defendant was convicted are not listed in section 667.5, subdivision (c). Defendant argues he was entitled to conduct credit at a rate of two days for every four-day period of actual custody under the version of section 4019 as amended effective January 25, 2010. The People concede this to be correct, and we accept the concession. This will change defendant's conduct credits from 38 days to 126 days.

Defendant also argues he was entitled to an additional day of actual custody credit because the record indicated he was taken into custody on February 15, 2011, rather than February 16, 2011 as stated in his probation report. The record indicates defendant was taken into custody on February 15, 2011, but the record is silent as to when he was actually booked into jail. The People have no objection to modifying the abstract of judgment to reflect an additional day of presentence custody credit.

### DISPOSITION

The case is remanded to the trial court with directions to modify the abstract of judgment to state that defendant has earned 254 days of actual custody credits and 126 days of conduct credits for a total of 380 days of presentence credit. The trial court is

directed to forward the modified abstract to the Department of Corrections and Rehabilitation.  The judgment as modified is affirmed.


                                                       BLEASE , Acting P. J.


We concur:


       MURRAY , J.


       DUARTE , J.