Filed 4/28/15  In re Axel M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re AXEL M., a Person Coming Under the Juvenile Court Law. | C071913 |
| THE PEOPLE, | (Super. Ct. Nos. JD10327, JD10423, JD11229) |
| Plaintiff and Respondent, | |
| v. | |
| AXEL M., | |
| Defendant and Appellant. | |

Appellant, Axel M., was the subject of three sustained wardship petitions under Welfare and Institutions Code section 602.  (Welf. & Inst. Code, § 602, subd. (a) [unless otherwise stated, statutory section references that follow are to the Welfare and Institutions Code].)  He appeals from a juvenile court dispositional order

1

placing him in juvenile hall until his 18th birthday following a finding that he violated various terms and conditions of his probation. Axel contends the juvenile court erred in awarding him predisposition credit; he claims he was entitled to 406 days of credit and was only allowed 15 days. He further claims the court did not consider his special educational needs and failed to formalize its educational findings on Judicial Council Form JV-535. Finally, Axel contends the court erred in imposing two restitution fines of $100 each and two collection fees of $10 each without providing a statutory basis for the fees and fines.

On our own motion we ordered the record augmented with a minute order dated October 21, 2013, wherein the juvenile court terminated Axel's probation.

We conclude the issues regarding Axel's predisposition credit and special educational needs are moot because Axel has been released from juvenile hall and the court has terminated probation, which the parties concede terminated the juvenile court's jurisdiction. We agree, however, that the juvenile court should have stated the statutory basis for the $100 restitution fines and the $10 collection fees. We remand the matter to the juvenile court for the limited purpose of identifying the statutory basis of the fines and collection fees.

## FACTS AND PROCEEDINGS

A. *Original Section 602 Petition*

On July 16, 2010, the Sacramento County District Attorney filed an original wardship petition under section 602 alleging 15-year-old Axel committed one count of petty theft (Pen. Code, § 484, subd. (a)), after Axel took merchandise from a grocery store without paying for it.

Axel admitted the allegation and the matter was transferred to Yolo County, Axel's legal residence, for final disposition. At this hearing, the court told Axel that the maximum term of confinement was six months. (Pen. Code, § 490.)

2

At the disposition hearing on September 9, 2010, the court placed Axel on non-wardship probation for six months and released him to his mother. (§ 725, subd. (a).)

Axel was in custody in the Sacramento County Juvenile Hall from July 14, 2010 to July 29, 2010 and from August 23, 2010 to August 25, 2010. On August 25, he was transferred to the Yolo County Juvenile Hall where he remained until the September 9 disposition hearing.

B.      *Second Section 602 Petition*

Nearly a month later, on October 10, 2010, Axel was detained at a light rail station for fare evasion. He identified himself as "Mario Stevens" to the arresting officer. Three days later the Sacramento County District Attorney filed a second section 602 petition alleging that Axel falsely represented and identified himself as another person to a police officer. (Pen. Code, § 148.9, subd. (a).) The petition notified Axel of the district attorney's intent to move for an increase of the maximum term of confinement by aggregating the terms of all previously sustained petitions. Axel admitted the charge, the court found the petition allegation true, and the case was transferred to Yolo County for final disposition.

The Yolo County District Attorney moved to terminate Axel's section 725, subdivision (a) probation and to impose wardship under section 725, subdivision (b). On November 2, 2010, the court granted the motion and adjudged Axel a ward of the court. (§§ 602, 725, subd. (b).) The court ordered Axel to remain in his mother's custody as well as to pay a $100 restitution fine to the state restitution fund. Axel had been confined in the Sacramento County Juvenile Hall from October10, the day he was detained at the light rail station, until October 18. On October 18 he was transferred to the Yolo County Juvenile Hall where he remained until the November 2 disposition hearing.

Over the next several months, Axel violated probation on numerous occasions. The court ordered that Axel be assessed under section 241.1 to determine whether he would best be served as a dependent or delinquent minor. (§ 241.1, subd. (a).) The assessment recommended Axel be served as a delinquent minor under section 602. On April 8, 2011, the juvenile court adopted the recommendation and ordered the probation department to look into an individualized education plan (IEP) while Axel was detained in juvenile hall. He was released from juvenile hall on April 22, 2011, to his mother. Two more probation violations followed shortly thereafter.

C.      *Third Section 602 Petition*

On May 25, 2011, the district attorney filed a third section 602 petition alleging Axel violated Vehicle Code section 10851, subdivision (a), unauthorized use of a vehicle (count 1); Penal Code section 496d, subdivision (a), receipt of stolen property (count 2); Vehicle Code section 12500, subdivision (a), driving without a license (count 3); Penal Code section 484, subdivision (a), petty theft (counts 4 and 5); and Penal Code section 136.1, subdivision (a)(2), attempting to dissuade a witness (count 6). On June 2, 2011, Axel admitted to count 1 as alleged and the remaining counts were dismissed. The court identified the maximum term of confinement as three years, eight months, which included the misdemeanor terms for the two previous section 602 petitions.

Prior to disposition, the court ordered Axel to undergo a psychological evaluation. Dr. Gregory evaluated Axel on June 10, 2011. Dr. Gregory recommended, among other things, an out of home placement with intensive drug treatment and psychotherapy as well as emotion regulation classes. The report also noted Axel was truant from school much of the time and that an education assessment regarding his current level of functioning would be helpful.

4

After considering Dr. Gregory's report at the June 16, 2011 dispositional hearing, the court continued Axel on probation and ordered him placed in either a foster home or group home. He was also ordered to pay two restitution fines in the amount of $100 each and two $10 collection fees. Axel was confined in juvenile hall prior to disposition.

Axel was ultimately sent to a group home in Turlock. Nearly a week later he absconded. Axel was taken into custody and later admitted violating probation by leaving the group home; he was confined in juvenile hall while awaiting disposition.

The court ordered probation to determine whether he qualified for wraparound services. We note the state Wraparound program was established in California in 1997. The purpose of the program is to provide intensive, individualized services to return children in group home care to their homes or to help youth at imminent risk of placement in high-end group homes to remain in their homes. (See State Dept. of Social Services Web site http://www.childsworld.ca.gov/pg1320.htm [as of Apr. 28, 2015].)

After determining Axel was eligible for the program, the court detained Axel in juvenile hall for two weeks to receive family therapy and wraparound services. Following a successful two weeks where he participated in several family therapy sessions and multiple wraparound meetings at juvenile hall, the court released Axel to his mother's care with orders to continue engaging in wraparound services. Axel left his mother's residence the next day. A notice of violation of probation was filed, Axel was taken into custody, and he later admitted the violation.

Following the probation violations, the court ordered a mental health assessment for Axel, which showed he suffered from cannabis dependence, amphetamine and alcohol abuse, and a major depressive disorder. Although the assessment states that Axel had an IEP and that he had been diagnosed with dyslexia, neither an IEP nor a diagnosis of dyslexia appear anywhere in the record. According

5

to the assessment, Axel presented with a much higher level of intellectual functioning than reflected in his minimal school credits and he was an avid reader while in detention. The assessment recommended that Axel engage in functional family theory, individual therapy, and urine analysis and that he participate in either wraparound or therapeutic behavioral services.

Based on the assessment, in December 2011, the court continued Axel as a ward of the court and ordered that he undergo therapy and counseling sessions while in custody awaiting placement in a group home. Axel was confined in juvenile hall prior to being placed at Triad Family Services group home. He left the group home without permission after one day.

Axel later admitted violating probation by leaving the Triad Family Services group home. He was then placed in Warner Mountain group home, which was known for its academic programs and its success in helping placements obtain high school diplomas. Shortly after arriving, Warner Mountain terminated Axel's placement.

In April 2012, probation filed a notice of violation alleging Axel had been terminated from Warner Mountain. Axel denied the allegations and the People dismissed the notice of violation following a contested jurisdictional hearing. The court directed probation to look for another out of home placement.

At a review hearing in May 2012, two placements were considered where Axel could obtain his G.E.D. Axel was placed at Our Common Ground group home in March 2012. A notice of violation was filed in May 2012 alleging Axel had left Our Common Ground without permission and that his whereabouts were unknown. He had been at Our Common Ground one day. Axel was taken into custody in June 2012 and admitted violating probation. Disposition was set in July. Axel was detained at juvenile hall pending disposition.

D.    *Dispositional Hearing and Juvenile Hall Commitment*

At the dispositional hearing on July 13, 2012, Axel's counsel argued that he should be released to his mother while the People requested he be committed to juvenile hall where he would be encouraged to finish his high school diploma or G.E.D.  A Minor and Family Assessment/Case Plan indicated that Axel neither had an IEP nor any mental health educational needs at that time.

The juvenile court continued Axel on probation and committed him to juvenile hall until his 18th birthday on March 15, 2013, subject to further order of the court.  The court expressed its belief that Axel was bright, capable, and that it was hopeful Axel would obtain his G.E.D.  The court was also willing to look at other educational opportunities while Axel was detained in juvenile hall.

The court awarded Axel 15 days of predisposition credit.  Among other conditions of probation, education authority was granted to the probation officer and Axel was ordered to pay two restitution fines in the amount of $100 to the state restitution fund, as well as two $10 collection fees.  Axel timely appealed the juvenile court's dispositional order.

E.    *Events Subsequent to Juvenile Hall Commitment*

At a review hearing the next month, the court spoke with Axel about attending college, and addressed Axel's refusal on two occasions to attend tutorial sessions for help in obtaining his G.E.D.  When Axel expressed apprehension about meeting with the tutor while other minors were present, the court ordered probation to look into possible accommodations.  The court stressed the value of school and acknowledged it would be hard at first given the amount of school Axel had missed.  The juvenile court instructed Axel to inform the court if he needed extra help with school work and to let it know what was going on with the tutor.  The court also requested that probation arrange for Axel to see a doctor about possible medication to help him.  In

the meantime, the court continued to look for placement options other than juvenile hall.

At a hearing a week later, the court considered a psychotropic medication request to treat Axel's depression and impulse control issues. The court granted the medication order to address Axel's mental health issues. During the hearing the court suggested possible books to read while in juvenile hall. The judge also discussed a tutor whom he believed would be good for Axel. The court had already spoken to the potential tutor and was hopeful that she could meet with Axel that night in juvenile hall.

Probation also updated the court about Axel's tutoring program at the hearing. According to the written update, a juvenile hall staff supervisor had arranged for Axel to have one-on-one tutoring on several occasions. Although Axel originally said he wanted to attend the tutoring sessions, he would later decline and attend recreation time instead. A week later, Axel informed the court that he had met with a tutor. The court stressed the importance of getting an education and with continuing to meet with the tutor and making a plan for when he turned 18.

F.    *Termination of Probation*

In October 2013, nearly seven months after Axel's 18th birthday, the juvenile court terminated Axel's probation as unsuccessful. According to the juvenile court's October 21 Minute Order, Axel's whereabouts were unknown at that time and probation had had no contact with him.

On February 6, 2015, we requested supplemental briefing from the parties regarding the effect, if any, of the October 21 Minute Order on the court's jurisdiction, and on whether that order rendered the special educational needs argument moot. In response, both parties conceded the October 21 Minute Order terminated the juvenile court's jurisdiction, although Axel argued jurisdiction was

8

terminated improperly. To our knowledge, no appeal was ever taken from the October 21 Minute Order.

Respondent's Motion to Augment the Record with case information sheets from two Sacramento County Superior Court criminal cases involving Axel is denied. (See Cal. Rules of Court, rules 8.410, subd. (b) & 8.155, subd. (a) [augmentation of record on appeal limited to documents filed or lodged in the case in superior court].)

DISCUSSION

I

*Predisposition Credits*

Axel contends he was entitled to 406 days of predisposition credit rather than the 15 days awarded by the juvenile court because the court aggregated the sentences from each of his sustained 602 petitions. While we agree that a juvenile court that elects to aggregate a minor's period of physical confinement on multiple petitions like the court did here "must also aggregate the predisposition custody credits attributable to those multiple petitions" (*In re Emilio C.* (2004) 116 Cal.App.4th 1058, 1067), we nevertheless find the issue moot based on events subsequent to the court's dispositional order.

"A case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief." (*Simi Corp. v. Garamendi* (2003) 109 Cal.App.4th 1496, 1503.) "Generally, courts decide only 'actual controversies' which will result in a judgment that offers relief to the parties." (*Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1178.) "Thus, appellate courts as a rule will not render opinions on moot questions[.]" (*Id.* at pp. 1178-1179.) Because we cannot provide Axel with any effective relief, we find the predisposition credit issue moot.

9

The court's July 13, 2012, dispositional order placed Axel in juvenile hall until March 15, 2013, his 18th birthday, subject to further order of the court. The October 21 Minute Order, with which we augmented the record, makes clear that the court had subsequently released Axel from juvenile hall. According to the October 21 Minute Order, Axel's whereabouts were unknown. The minute order further shows that the court terminated Axel's probation at that time.

It appears, then, that Axel has reached the age of majority, has been released from custody and is no longer subject to any terms or conditions of probation. Furthermore, the parties concede the October 21 Minute Order terminated the juvenile court's jurisdiction over Axel. Since Axel is no longer on probation and no longer subject to the juvenile court's jurisdiction, he cannot be returned to custody for any purported probation violation. Thus, there is nothing against which to "credit" any of the days Axel may have spent in predisposition confinement.

We are mindful that, under certain circumstances, predisposition credit issues have avoided mootness determinations on appeal even if a minor has been released from custody. For example, in *In re Stephon L.* (2010) 181 Cal.App.4th 1227, 1231, the court held a predisposition credit issue was not moot even though a minor's camp commitment was set to expire before the appeal could be resolved because the minor was still on probation and could be returned to custody for future probation violations.

That is not the case here, however. Axel is no longer in custody, and the juvenile court not only terminated his probation but also terminated its jurisdiction over him. While Axel argues the court erred in terminating jurisdiction, Axel never appealed the October 21 Minute Order. The time for doing so has long since passed. (Cal. Rules of Court, rule 8.406, subd. (a)(1) [deadline for appealing a juvenile court order is 60 days from date of the order]; *In re Michelle M.* (1992) 8 Cal.App.4th 326, 328-329 [failure to appeal from order terminating juvenile court's jurisdiction in

10

dependency context renders moot appeal from interim orders].)  Given these circumstances, we conclude the predisposition credit issue is moot.  (*In re Charles G.* (2004) 115 Cal.App.4th 608, 611 [deeming an appeal from a juvenile delinquency order moot where the minor had served his term of confinement and his probation had been terminated].)

II

*Educational Needs*

For the same reasons, we conclude Axel's claims that the juvenile court failed to consider his special educational needs and did not formalize its educational findings on Judicial Council Form JV-535 are moot.  Where a juvenile court terminates its jurisdiction over a minor and the minor does not appeal from the order terminating the juvenile court's jurisdiction, any appeal from an interim order is rendered moot because there is no remaining jurisdiction upon which to act.  (See e.g., *In re Michelle M., supra,* 8 Cal.App.4th at pp. 328-329.)

Here, no direct relief can be granted even were we to find reversible error, because the juvenile court no longer has jurisdiction and we are only reviewing that court's ruling.  Axel's remedy was to attack the juvenile court's order terminating jurisdiction, which he did not do.  (*In re Michelle M. supra,* 8 Cal.App.4th at p. 330.) Having failed to appeal the jurisdictional termination, he cannot maintain his appeal of the juvenile court's other interim orders regarding custody credits or educational needs.

III

*Restitution Fines*

Axel contends, and respondent concedes, the juvenile court imposed two $100 restitution fines and two $10 collection fees without identifying their statutory basis

11

as required by law.  We agree the matter should be remanded to allow the juvenile court to identify the statutory basis of the $100 restitution fines and $10 collection fees identified in paragraphs 12 and 12a of the dispositional order dated July 13, 2012.  (*People v. High* (2004) 119 Cal.App.4th 1192, 1200-1201.)

DISPOSITION

The matter is remanded for further proceedings to allow the juvenile court to identify the statutory basis of the restitution fines and collections fees imposed in paragraphs 12 and 12a in the July 13, 2012 dispositional order.  In all other respects, the appeal is dismissed as moot.


         HULL          , Acting P. J.


We concur:


      MAURO       , J.


      MURRAY      , J.

12