Filed 1/23/24  P. v. Godinez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C097922 |
| v. | (Super. Ct. No. 22FE002997) |
| EDUARDO GODINEZ, | |
| Defendant and Appellant. | |

Defendant Eduardo Godinez struck his girlfriend, A.D., in the back with enough force to break one of her ribs and lacerate her spleen.  A jury convicted defendant of battery causing serious bodily injury, willful infliction of corporal injury on a person with whom he was in a dating relationship, and assault by means of force likely to produce great bodily injury.  The jury also found various great bodily injury allegations to be true, and found that defendant had a prior conviction for inflicting corporal injury on a previous girlfriend.  In a bifurcated proceeding, the jury found true an aggravating circumstance allegation that defendant engaged in violent conduct that indicates a serious danger to society.  The trial court sentenced defendant to an aggregate 10 years in state prison.

1

Defendant now contends (1) the trial court should have instructed the jury that it could not find true the violent conduct aggravating circumstance unless it determined defendant's commission of the offense was "distinctively worse" than the ordinary commission of the offense, and if the contention is forfeited, his counsel was ineffective in failing to object to the instructional error; and (2) defense counsel was deficient in failing to object to the jury's true finding on that aggravating circumstance to the extent it was based on the nature of the victim's injuries.

We conclude defendant has not established instructional error or ineffective assistance of counsel. We will affirm the judgment and direct the trial court to correct the abstract of judgment.

BACKGROUND

Defendant and A.D. began dating in 2020. By 2022, they were in an exclusive relationship and spent most nights together. Over time, defendant became more and more controlling and abusive.

The violent incident giving rise to defendant's convictions occurred on February 14, 2022. Defendant and A.D. had plans to go out for Valentine's Day. A.D. met defendant at his friend's house after she got off of work. From there, the plan was for A.D. and defendant to take separate cars to a parking lot, where they would park one of the cars, and then continue to the restaurant in a single car. However, because defendant also needed gas, he told A.D. to first follow him to a gas station.

A.D. began following defendant as planned, but lost sight of him in traffic before they made it to the gas station. Rather than try to locate him, she decided to drive straight to where they planned to leave one of the cars. When A.D. did not arrive at the gas station as instructed, defendant called her cell phone and accused her of "cheating on him" and "trying to get away from him." A.D. tried to explain what happened, but he did not believe her. She then pulled into the parking lot of a fast food restaurant and waited for defendant. When he arrived several minutes later, A.D. got into his car and again

2

tried to explain what happened. Defendant accused her of lying and again accused her of cheating on him. At some point, A.D. told defendant that she "just couldn't deal with it anymore" and "wanted to go home." Defendant responded by calling her various names, "like bitch and . . . slut."

A.D. decided to get out of defendant's car. As she did so, defendant hit her in the back, possibly with a vape pen that he was holding in his hand at the time. A.D. did not see the blow, but described the pain it caused: "It had felt like nothing I had ever felt before. I mean, I was really shocked because it had a really sharp pain, and I was surprised by, you know, feeling a punch. It was stronger than that feeling. It hurt really bad like – and I almost thought it was sciatic pain or something, but I knew it was more, like, severe in the pain." A.D. yelled at defendant and then walked quickly into the restaurant. By the time she got inside, defendant had called her on her cell phone. A.D. continued yelling at defendant over the phone, called him a "woman beater," and threatened to call the police. Defendant eventually drove away. A.D. then left the restaurant and drove to her aunt's house. While her back still hurt, the sharp pain she felt immediately after defendant hit her "became duller," so she decided not to seek medical treatment.

A.D. went to work the next morning, but arrived late because she was still "in pain and struggling." Later in the morning, she "started to feel really dizzy" and fell to the ground, nearly losing consciousness. A colleague drove her to the hospital, where it was determined that defendant's blow broke one of A.D.'s ribs and lacerated her spleen, causing internal bleeding. She spent four nights in the hospital and did not fully recover for four to six weeks.

A.D. also testified about an incident that occurred about a week before defendant broke her rib on Valentine's Day. They started arguing while at a friend's house. During the argument, defendant punched A.D. in the face, causing bruising to her neck and jaw.

3

A.D. did not report that incident to police because she was embarrassed. She was also afraid "for what would happen to him" and "didn't know what to do to get out."

A.D. further testified about bruises on her body that were photographed while she was in the hospital. In addition to the bruising on her back, neck, and jaw, she testified that bruising on her arms and breasts were also caused by defendant. The bruises to her arms were caused by defendant holding her down during sex. The bruises to her breasts were caused by defendant using his mouth to "mark" her as a way to say that she was his.

Additional incidents of physical abuse include a time when defendant pushed A.D. down onto concrete and another time when he hit her in the forehead with a vape pen, causing blood to stream down her face. Defendant also threatened to kill her on two occasions. According to A.D., defendant told her "he had participated in having someone killed before and that he could like take out my teeth and feed me to the hogs, basically."

The jury convicted defendant of battery causing serious bodily injury (count 1), willful infliction of corporal injury on a person with whom he was in a dating relationship (count 2), and assault by means of force likely to produce great bodily injury (count 3). The jury found various great bodily injury allegations to be true and also found that defendant had a prior conviction for inflicting corporal injury on a previous girlfriend. In a bifurcated proceeding, the jury further found the following aggravating circumstance to be true: "The defendant has engaged in violent conduct that indicates a serious danger to society." (Cal. Rules of Court, rule 4.421(b)(1).)[1]

At the sentencing hearing, the trial court found three additional aggravating circumstances to be true based on defendant's criminal record: that his prior convictions are numerous and of increasing seriousness (rule 4.421(b)(2)), he was on probation at the time he committed the present offenses (rule 4.421(b)(4)), and his prior performance

---

[1] Undesignated rule references are to the California Rules of Court.

on probation was unsatisfactory (rule 4.421(b)(5)). The trial court sentenced defendant to 10 years in state prison, consisting of the upper term of five years for count 2, plus a consecutive upper term of five years for the great bodily injury enhancement attached to that count. The trial court imposed but stayed middle term sentences on counts 1 and 3 pursuant to Penal Code section 654.[2]

## DISCUSSION

### I

Defendant contends the trial court prejudicially erred and violated his federal constitutional rights by failing to instruct the jury that it could not find the violent conduct aggravating circumstance allegation to be true unless it determined defendant's commission of the offense was "distinctively worse" than the ordinary commission of the offense.

The jury was instructed on the violent conduct aggravating circumstance allegation as follows: "The People allege that the defendant in the commission of the crimes for which he has been found guilty engaged in violent conduct which indicates that he or she represents a serious danger to society. You must determine if this allegation is true. [¶] A serious danger to society means an unreasonable risk that the defendant will commit a new violent felony. [¶] In determining whether the People have proved that defendant's conduct in the commission of the crimes for which he has been found guilty indicates a serious danger to society, you may consider the circumstances of the present offense, whether defendant has a criminal history, and if so, whether that history includes violent conduct, defendant's conduct after commission of the present offenses, [and] the remoteness of the crimes in defendant's criminal history. [¶]

---

[2] Undesignated statutory references are to the Penal Code.

The People have the burden of proving this allegation beyond a reasonable doubt.  If the People have not met this burden, you must find that the allegation has not been proved."

Defendant does not claim this instruction is inaccurate in any way.  Instead, he asserts it improperly fails to inform the jury, in accordance with case law, that "[a]n aggravating circumstance is a fact that makes the offense 'distinctively worse than the ordinary.' " (*People v. Black* (2007) 41 Cal.4th 799, 817, quoting *People v. Moreno* (1982) 128 Cal.App.3d 103, 110.)  However, a trial court has "no sua sponte duty to revise or improve upon an accurate statement of law" (*People v. Lee* (2011) 51 Cal.4th 620, 638), and a party may not complain on appeal that an instruction otherwise correct in law was too general or incomplete unless the party requested appropriate clarifying or modifying language.  (*People v. Mackey* (2015) 233 Cal.App.4th 32, 106.)  Defendant did not do so.  The contention is forfeited.[3]

Anticipating this conclusion, defendant claims his attorney provided constitutionally deficient assistance in failing to object to the instructional error.

In order to demonstrate ineffective assistance of counsel, defendant must show that his counsel's failure to seek modification of the challenged instruction fell below an

---

[3]  Defendant points out that CALCRIM No. 3234, added to the standard instructions after defendant's trial, includes similar language:  "You may not find the allegation true unless all of you agree that the People have proved that the defendant's violent conduct was distinctively worse than that posed by an ordinary commission of the underlying crime and that the violent conduct, considered in light of all the evidence presented [and the defendant's background], shows that the defendant is a serious danger to society." (CALCRIM No. 3234.)  However, as the commentary to the new instruction acknowledges, the language defendant claims was improperly omitted, i.e., distinctively worse than the ordinary, "may create a constitutional vagueness problem" under *Johnson v. United States* (2015) 576 U.S. 591, 597-598.  (Com. to CALCRIM No. 3234.)  We need not address the matter because, as the commentary also notes, this language is based on case law dating back to 1982.  (*Ibid*., citing *People v. Moreno, supra*, 128 Cal.App.3d at p. 110.)  Accordingly, if defendant wanted the "distinctively worse" language added to the instruction, he should have asked the trial court to add it.  His failure to do so forfeits the contention on appeal.

objective standard of reasonableness and resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-692; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.) To establish prejudice, he must show a "reasonable probability" that but for this challenged omission "the result of the proceeding would have been different." (*Strickland*, at p. 694; *Ledesma*, at pp. 217-218.)

The jury was tasked with determining whether defendant engaged in violent conduct indicating he represents a serious danger to society. Striking A.D. in the back with enough force to break a rib and lacerate her spleen amounted to violent conduct. As the trial court properly instructed, "serious danger to society means an unreasonable risk that the defendant will commit a new violent felony," and in determining whether defendant represents such a danger, the jury was to consider "the circumstances of the present offense, whether defendant has a criminal history, and if so, whether that history includes violent conduct, defendant's conduct after commission of the present offenses, [and] the remoteness of the crimes in defendant's criminal history." Each of those considerations support the jury's finding. And together, they make the crime "distinctively worse" than the ordinary commission of the offense. Thus, had the jury been instructed with this language, there is no reasonable probability it would not have found the aggravating circumstance to be true.

Second, even if the jury had not found the violent conduct aggravating circumstance to be true, the trial court found true three additional aggravating circumstances based on defendant's criminal record. Any one of those additional aggravating circumstances would have justified imposition of an upper term sentence.

There is no reasonable probability of a more favorable result had the jury been instructed with the "distinctively worse" language. Defendant's ineffective assistance contention lacks merit. (See *Strickland v. Washington, supra*, 466 U.S. 668 at p. 697 [a reviewing court may adjudicate an ineffective assistance claim solely on the issue of prejudice without evaluating counsel's performance].)

7

## II

Defendant next claims his trial counsel provided constitutionally deficient assistance by failing to object to the jury's true finding on the violent conduct aggravating circumstance allegation to the extent it was based on the nature of the victim's injuries.

"Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile." (*People v. Price* (1991) 1 Cal.4th 324, 387.) As we have explained, the jury properly found the violent conduct aggravating circumstance to be true. The jury was instructed that it could consider the circumstances of the present offense, which included serious injuries to A.D. But that did not make the true finding itself objectionable. Moreover, the true finding is supported by more than just A.D.'s injuries. Objecting to the true finding would have been futile.

Nevertheless, defendant argues that had counsel objected, the trial court could not have used this aggravating circumstance to impose an upper term based on A.D.'s injuries because such injury was an element of both the crime of battery causing serious bodily injury (count 1) and the great bodily injury enhancement attached to count 2. Instead, defendant argues, the trial court could only have used the violent conduct aggravating circumstance to impose an upper term to the extent it was based on defendant's history of violent conduct. However, the only thing the jury knew about his history of violent conduct was that he was convicted of domestic violence in 2019. That prior conviction already increased the triad for the offense. (See § 273.5, subd. (f).)

The violent conduct aggravating circumstance does not aggravate an offense because of great bodily injury, or because of a certain prior conviction. It aggravates the offense because defendant's violent conduct indicates that he represents a serious danger to society. In this case, his violent conduct caused great bodily injury, and his history of violent conduct included a prior domestic violence conviction. Also supporting the true finding in this case were prior acts of domestic violence committed against A.D. It is the totality of defendant's violent conduct that indicates he represents a serious danger to

8

society.  Defendant cites no authority holding use of the violent conduct aggravating circumstance to impose an upper term constitutes an improper dual use of facts simply because that conduct caused great bodily injury in this case or the defendant's history of violence includes a domestic violence conviction.  Nor have we found any on our own.

Counsel could have reasonably concluded that objecting to the trial court's use of the violent conduct aggravating circumstance as an improper dual use of facts would have been futile.  In any event, as we have explained, the trial court found true three additional aggravating circumstances.  Thus, there is no reasonable probability of a more favorable sentence even had such an objection been successful.

### III

During our review, we identified an error in the abstract of judgment.  The trial court sentenced defendant to 10 years in prison, consisting of the upper term of five years on count 2 plus a consecutive upper term of five years for the great bodily injury enhancement attached to that count.  The abstract of judgment, however, incorrectly indicates that the trial court imposed an upper term sentence of 10 years on count 2.

"Courts may correct clerical errors at any time, and appellate courts . . . that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)  We shall therefore direct the trial court to correct this clerical error.  (See *People v. High* (2004) 119 Cal.App.4th 1192, 1200.)[4]

### DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare a corrected abstract of judgment reflecting the upper term sentence of five years imposed on count 2

---

[4] The parties did not raise this issue in their briefs.  Because the law appears clear, however, we will direct the trial court to correct the abstract without further briefing in the interest of judicial economy.  Any party aggrieved may petition for rehearing. (Gov. Code, § 68081.)

9

and an additional upper term sentence of five years imposed for the great bodily injury enhancement, and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

/S/
MAURO, Acting P. J.

We concur:

/S/
DUARTE, J.

/S/
MESIWALA, J.

10