Filed 5/26/15  P. v. Tapia-Reyes CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040985 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. F18058) |
| v. | |
| MARTIN TAPIA REYES, | |
| Defendant and Appellant. | |

## I.     INTRODUCTION

Defendant Martin Tapia Reyes was convicted, by jury trial, of robbery (Pen. Code, § 211)[1] and active participation in a criminal street gang (§ 186.22, subd. (a)).  The trial court found that defendant had two prior serious felony convictions (§ 667, subd. (a)(1)) that qualified as strikes (§§ 667, subds. (b)-(i), 1170.12).

Defendant was sentenced to an indeterminate term of 25 years to life for the robbery, plus a 10-year determinate term for the prior serious felony allegations.  The trial court imposed a concurrent indeterminate term of 25 years to life for the criminal street gang offense.  The trial court imposed a $66 crime prevention fine (§ 1202.5) as well as other fees and fines.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Defendant appealed to this court, claiming there was insufficient evidence to support his conviction of active participation in a criminal street gang. (§ 186.22, subd. (a).) Based on the recent California Supreme Court case of *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*), we agreed, and we reversed that conviction. (*People v. Tapia Reyes* (May 21, 2013, H037362) [nonpub opn.].)[2] We also agreed that this matter should be remanded for a new sentencing hearing, so the trial court could reconsider defendant's motion to dismiss his prior strikes, recalculate the fees and fines, specify the statutory basis for the penalty assessments used to calculate the $66 aggregate fine that was imposed pursuant to section 1202.5, and award presentence conduct credit.

On remand, the trial court denied defendant's renewed motion to dismiss his prior strikes. (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).) The trial court also recalculated the court security fee, court facilities fee, and the penalty assessments imposed in conjunction with the section 1202.5 fine, and it awarded defendant 60 days of presentence conduct credit.

On appeal, defendant contends the trial court abused its discretion by denying his renewed *Romero* motion. Defendant also contends that the abstract of judgment must be amended to delete the reference to his conviction of active participation in a criminal street gang and to reflect the amounts and statutory bases for the penalty assessments used to calculate the total section 1202.5 fine.

We will order the abstract of judgment corrected and affirm the judgment as corrected by our order.

---

[2] We have taken judicial notice of the record in defendant's prior appeal.

## II.    BACKGROUND[3]

### A.    *Current Conviction*

On June 28, 2009, Kristian P. Ivanov was working alone at the La Selva Surf Shop.  Defendant entered the shop at around 10:30 a.m.  Ivanov helped defendant select a pair of sweatpants.  Meanwhile, defendant's companion, Xavier Carmona, stood in the shop's doorway, looking in and out.

Defendant told Ivanov that he was a Norteño gang member and that he had a "[f]airly high" status in the gang.  He also said that he was "buzzed" or "buzzing."  He asked if Ivanov could "hook him up with a marijuana dealer."  Ivanov said he did not know where to find a marijuana dealer.  Defendant then asked Ivanov to "hook him up," meaning give him the sweatpants or other merchandise for free.  Ivanov declined.

Defendant paid for the sweatpants, but then indicated he had changed his mind.  Ivanov returned the two $20 bills that defendant had given him and asked for the two $5 bills he had given defendant as change.  Defendant refused and took a second pair of sweatpants from a rack.  Ivanov said defendant could not do that, but defendant responded, "I [can] do this if I want."

Defendant instructed Carmona to shut the door of the surf shop.  Although Carmona initially refused, he shut the door after defendant reiterated his command.  At that point, Ivanov said "stop" and said he would hook defendant up.  Defendant approached Ivanov behind the counter, boxed Ivanov in, and "nudged" him with his chest.  Defendant said, "[D]o you want to force me to be pushed to the next level" or "do you want me to get physical."  He also said, "I could have robbed you."  Ivanov felt intimidated.

---

[3] Our factual and procedural summary is based on our prior opinion in *People v. Tapia Reyes, supra,* H037362.

Before leaving with both pairs of sweatpants and the two $5 bills, defendant told Ivanov, "[P]eople like you call the police." He also said, "I will be back."

## B.     *Jail Incident and Gang Evidence*

On October 28, 2009, defendant and two other inmates were being escorted from the medical area to the N unit. The three inmates attacked another inmate who claimed to be a Norteño "dropout." Defendant and his companions ignored an officer's commands, so the officer used pepper spray to stop the fight.

Defendant had a number of gang-related tattoos, including a star on his face, the Roman numeral XIV on his stomach, a Mayan figure on his chest with the number 14 on it, and the word "Norteno" across his lower back. Carmona (his companion at the surf shop) had gang-related tattoos, had admitted involvement in a gang-related jail fight, and had previously admitted he "backs up" Norteños.

By stipulation, the jury learned that defendant had admitted gang affiliation to law enforcement officers on four occasions in 2008 and 2009. The jury also learned by stipulation that during the commission of a felony offense on July 21, 1996, defendant had displayed a tattoo of XIV on his stomach and told witnesses he was from North Side, and that he had been in the company of four other Norteño gang members when he committed the offense. Finally, the jury learned by stipulation that on October 11, 2002, defendant committed a felony offense, during which he had claimed gang affiliations.

## C.     *Procedural History*

Defendant was charged with active participation in a criminal street gang (count 1; § 186.22, subd. (a)), robbery (count 2; § 211), assault by means likely to produce great bodily injury (count 3; former § 245, subd. (a)(1)), and resisting arrest (count 4; § 148, subd. (a)). The first amended information alleged that counts 2 through 4 were committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subds. (b) & (d)). The information further alleged that defendant had two prior serious felony convictions (§ 667, subd. (a)(1)) that qualified as strikes (§§ 667,

4

subds. (b)-(i), 1170.12):  a 1996 robbery conviction and a 2003 conviction of assault by means of force likely to produce great bodily injury, with an enhancement for personal infliction of great bodily injury.

The jury found defendant guilty of active participation in a criminal street gang (count 1) and robbery (count 2), but was unable to reach a verdict on the charges of assault by means likely to produce great bodily injury (count 3) and resisting arrest (count 4).  The jury made a not true finding on the allegation that the robbery was committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)).  The trial court declared a mistrial as to counts 3 and 4, and it ultimately dismissed those counts upon the prosecutor's motion.  The trial court found all of the prior conviction allegations true.

Prior to sentencing, defendant filed a *Romero* motion, requesting the trial court dismiss one or both strike allegations.  (See *Romero, supra,* 13 Cal.4th 497.)  The trial court denied the *Romero* motion.

At the sentencing hearing on July 29, 2010, the trial court sentenced defendant to a term of 25 years to life for the robbery, plus a 10-year determinate term for the two prior serious felony allegations.  It imposed a concurrent term of 25 years to life for the crime of active participation in a criminal street gang.  The trial court ordered defendant to pay a $10,000 restitution fine (§ 1202.4, subd. (b)), a suspended $10,000 parole revocation fine (§ 1202.45), a $60 court security fee (§ 1465.8), a $60 court facilities fee (Gov. Code, § 70373), and a $66 crime prevention fine (§ 1202.5).

This court subsequently reversed defendant's conviction of actively participating in a criminal street gang (count 1; § 186.22, subd. (a)) based on *Rodriguez, supra,* 55 Cal.4th 1125.  We also remanded the matter for a new sentencing hearing, so the trial court could reconsider defendant's motion to dismiss his prior strikes, recalculate the fees and fines, specify the statutory basis for the penalty assessments used to calculate the

5

$66 fine that was imposed pursuant to section 1202.5, and award him presentence conduct credit.

### D. *Romero Hearing*

Following our remand, defendant filed a new *Romero* motion, asking the trial court to dismiss one or both of his prior strikes. Defendant argued that the current offense "was nonviolent and did not involve a weapon," that he had been under the influence at the time, and that he had not intended to commit a crime when he entered the surf shop. Defendant noted that his strikes consisted of a robbery 17 years earlier and an assault "with his fist" 11 years earlier. Defendant further claimed he had good prospects for rehabilitation, noting that he was committed to sobriety and that he had job skills.

The prosecution filed written opposition to the motion in which it described defendant's criminal history as "egregious and continuous." The prosecution listed defendant's prior arrests, convictions, and parole violations, and the prosecution provided documentation of each offense. The prosecution contended that defendant was still a gang member and that he had recently engaged in "yet another" jail fight.

The documentation provided by the prosecution showed the following. In December of 1992, defendant was arrested after police found him with a .22-caliber rifle that had been stolen a few months earlier. In February of 1993, defendant was arrested after police saw him fire a .38 Special pistol towards a bar. In June of 1993, defendant was arrested after police found a loaded .357 magnum revolver in a car that he had been driving. In April of 1995, defendant was arrested after he punched someone and then took the person's money, during a party where numerous gang members were in attendance. The documentation also included records related to defendant's two prior strike convictions: the 1996 robbery conviction and the 2003 conviction of felony assault. The documentation also contained defendant's prison records, which showed several parole violations, defendant's validation "as an Associate of the Northern Structure prison gang," and the fact that defendant was in custody for much of the time

6

since 1996.  Finally, the documentation included a jail incident report regarding a September 19, 2013 incident in which defendant was placed in "ad seg" after he was pepper sprayed and a correctional officer was injured.

The trial court held a hearing on defendant's *Romero* motion on April 16, 2014.[4] At the beginning of the hearing, the trial court indicated that its tentative opinion was to deny the motion.  The trial court noted that there had not been "a change of circumstances" since the prior *Romero* hearing.  The court indicated that its tentative opinion was based on defendant's criminal history.

Defendant argued that although his current conviction was for a violent felony as defined by statute, "the actual acts could hardly be less violent."  He argued that the victim's fear is "what made it a 211" and noted that the jury had not found that the crime was gang-related.  As for defendant's criminal background, he noted that the prosecution had provided documentation of a number of defendant's arrests without providing information about whether the arrests led to convictions.  Regarding his prior strikes, defendant noted that the 1996 offense occurred when defendant was only 22 years old and that "there was no weapon," and that the second strike was "an assault with a fist." Defendant noted that he had documentation of his employment prospects and skills.  He also noted that although he had been placed with other gang members while in prison, it was not because he was active in a gang but "because of his history and . . . desire not to be assaulted or potentially killed."

Several witnesses testified on defendant's behalf at the hearing.  Efrain Roman had been defendant's friend for over 30 years and believed defendant was "a good, good man."  Maria Zarate, defendant's sister, spoke on behalf of herself and defendant's mother.  She asked the trial court to give defendant a chance to prove that "he is a great

---

[4] As the original trial judge had retired, a different judge heard defendant's renewed *Romero* motion.

7

person, that he has changed and learned his lessons and basically that we need him in our family."

Defendant also addressed the court, saying he was "embarrassed and ashamed" about his criminal actions. He told the court that he had "left that gang lifestyle long ago" and that he understood that being in a gang had not been good for him. He described his drug and alcohol addiction as "the very core" of his "present situation." He requested an "opportunity to redirect [his] life."

The prosecutor argued that what defendant was telling the court was "a continuing lie and a continuing evasion of responsibility for a 20-year crime spree as a gang member." He argued that defendant would not have requested the N unit of the gang or said that he "can program" if he was no longer an active gang member. He argued that the current offense was gang-related and not "de minimis." He noted that a number of defendant's prior offenses involved possession of firearms and that defendant had knocked out two of the victim's teeth during the offense leading to his 2003 strike conviction. He argued that defendant "should never ever be out on the streets again."

Defendant subsequently submitted documentation showing that he had been classified as a gang member at the county jail due to his history, not because of a recent admission.

On April 29, 2014, the trial court denied defendant's *Romero* motion. The court referred to defendant's two prior strikes and the current offense, then found that defendant's criminal history did not "allow[]" the court to find that defendant was outside the scope of the Three Strikes law. The court acknowledged that the strikes were from 1996 and 2003 convictions, but found that defendant had been in custody for much of the intervening time, which "undermines the argument that's being made as to the remoteness of those strike convictions."

8

*E.      Status Conference*

On May 22, 2014, the trial court held a status conference to address the other matters addressed in our remand order, including the calculation of fees, fines, and presentence conduct credit.  The trial court indicated it had recalculated the penalty and assessments to be imposed for the section 1202.5 fine, and it imposed a "total fine of $36."  The trial court also imposed a $30 court security fee pursuant to section 1465.8 and a $30 court facilities fee pursuant to Government Code section 70373, and it awarded defendant 60 days of presentence conduct credits in addition to the 402 days of actual presentence custody credit he had previously been awarded.

## III.    DISCUSSION

*A.      Romero Motion*

Defendant contends the trial court erred by denying his renewed *Romero* motion, arguing that the court's decision "ignored many relevant factors, and is inconsistent with the facts, and case law."

### 1.      Applicable Law

In *People v. Carmony* (2004) 33 Cal.4th 367 (*Carmony*), the California Supreme Court set forth the basic principles applicable to a trial court's decision to strike a prior conviction.  " 'In *Romero,* we held that a trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony, on its own motion, "in furtherance of justice" pursuant to . . . section 1385(a).'  [Citation.]  We further held that '[a] court's discretionary decision to dismiss or to strike a sentencing allegation under section 1385 is' reviewable for abuse of discretion.  [Citation.]"  (*Carmony, supra,* at p. 373.)  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*Id.* at p. 377.)

" '[T]he Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' [Citation.]" (*Carmony, supra,* 33 Cal.4th at p. 377.) " '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*Carmony, supra,* at p. 377.)

### 2. Analysis

Defendant first contends that the trial court erroneously treated his criminal history, and particularly his two prior strike offenses, as dispositive of the *Romero* motion. The record does not support this claim. In announcing its ruling, the trial court noted it had considered all of the evidence submitted by both the defense and prosecution, but that the defense evidence was "not persuasive." The fact that the trial court "focused its explanatory comments" primarily on defendant's strike priors does not mean that the trial court failed to consider all of the relevant *Romero* factors. (See *People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

Defendant next contends that the trial court erred by finding that there was no new evidence since the original *Romero* hearing. Defendant points out that he presented new evidence showing that he was no longer an active gang member, and that this court

10

reversed his gang conviction.  Defendant also argues that the trial court's comments indicate it erroneously believed defendant had to show a change of circumstances from the original hearing.  Again, defendant's claims are not supported by the record.  The trial court noted it had considered all of the evidence submitted by both the defense and prosecution, which included the evidence that defendant claimed he was no longer an active gang member, and the trial court indicated that it had "balance[d]" that information.  Although the trial court referred to the lack of any "change of circumstances" when announcing its tentative ruling, the trial court's comments in announcing its decision do not indicate that the court applied an incorrect legal standard. The trial court found, based on all of the information presented by the parties, that defendant was not "outside the scope of the three strikes law," which is the proper legal standard.  (See *Carmony, supra,* 33 Cal.4th at p. 377.)

Regarding his current offense, defendant claims the trial court failed to "fully consider" that it was "about as minor as a robbery can be."  He points out that his initial encounter with the victim was nonviolent, that he was under the influence, and that he was not armed.  Defendant claims that the offense was akin to the new crime of shoplifting.  (See § 459.5, subd. (a).[5])  The record does not support defendant's characterization of the robbery as akin to a mere shoplifting offense.  During the offense, defendant physically cornered the victim in a small space from which the victim had no escape, after boasting about being a high-ranking Norteño gang member.  He threatened to "get physical" and that he would come back.  As a result of defendant's actions, the

---

[5] Section 459.5, subdivision (a) defines the crime of shoplifting as "entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)," and it provides that shoplifting is generally a misdemeanor.

11

victim was intimidated and so fearful of defendant's return he did not call the police for 10 minutes.

Defendant further argues that a second strike sentence of 16 years (a doubled term of six years for robbery plus a term of 10 years for the prior serious felonies) would be "more than sufficient" to punish him "for an offense in which he hurt no one, and took property worth about $70." Defendant notes that by the time he would be released from such a sentence, he would be about 48 years old and less likely to reoffend or engage in gang activity. Defendant cites to *In re Stoneroad* (2013) 215 Cal.App.4th 596, which discussed a study noting that " 'as a general matter, people age out of crime,' " with rates of criminality declining " 'drastically after age 40 and even more so after age 50.' [Citation.]" (*Id.* at p. 634, fn. 21.) We acknowledge that "a defendant's sentence is . . . a relevant consideration when deciding whether to strike a prior conviction allegation; in fact, it is the overarching consideration because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences." (*People v. Garcia* (1999) 20 Cal.4th 490, 500.) However, defendant's current offense is not the only reason he is subject to a Three Strikes sentence. The record reveals that the current offense was just one offense in defendant's long criminal history, which included numerous crimes involving violence and weapons. Based on its context in defendant's criminal background, the trial court reasonably determined that a third strike sentence for the robbery was appropriate because defendant demonstrated that he continues to pose a danger to society.

Finally, defendant contends that his "prospects to function in society are favorable," pointing to evidence of his membership in a construction trade union and evidence that he can be employed as a tattoo artist. He also notes that he has support from family and friends. These facts do not convince us that the trial court abused its discretion by denying defendant's *Romero* motion. Defendant presumably had the same ability to work and family support when he committed the robbery, but those factors did

12

not stop him from engaging in violent criminal behavior. Considering defendant's long history of criminality, the trial court could reasonably determine that defendant "did not add maturity to age" and that he was not outside the scope of the Three Strikes law. (See *People v. Williams* (1998) 17 Cal.4th 148, 163.)

In sum, on this record, the trial court's decision not to dismiss either of defendant's strikes was not an abuse of discretion. (See *Carmony, supra,* 33 Cal.4th at p. 373.)

### B. Abstract of Judgment

Defendant contends that the abstract of judgment must be amended to delete the reference to his conviction of active participation in a criminal street gang and to reflect the amounts and statutory bases for the penalty assessments used to calculate the total section 1202.5 fine. The Attorney General concedes that these amendments should be made.

The amended abstract of judgment was issued on May 27, 2014, after we reversed defendant's conviction for actively participating in a criminal street gang. However, the abstract still indicates defendant was convicted of that crime. We will order the clerk of the superior court to correct the abstract of judgment to reflect that defendant's conviction of actively participating in a criminal street gang (§ 186.22, subd. (a)) was reversed.

Defendant and the Attorney General agree that the trial court should have separately identified each penalty assessment imposed on the $10 crime prevention fine (§ 1202.5) and listed each one in the abstract of judgment. In *People v. High* (2004) 119 Cal.App.4th 1192, the court explained that the abstract of judgment must specify the amount of each fee, fine, and penalty assessment so that the Department of Corrections can "fulfill its statutory duty to collect and forward deductions from prisoner wages to the appropriate agency" and so that state and local agencies can be assisted "in their collection efforts." (*Id.* at p. 1200.) The parties agree that the trial court properly

13

calculated the penalty assessments as follows: a $10 state penalty assessment (§ 1464, subd. (a)(1)), a $2 state surcharge (§ 1465.7), a $3 state courthouse construction penalty (Gov. Code, § 70372), a $7 additional penalty (Gov. Code, § 76000, subd. (a)(1)), a $2 additional penalty for emergency medical services (Gov. Code, §76000.5, subd. (a)(1)), a $1 penalty to implement the DNA Fingerprint, Unsolved Crime and Innocence Act (Gov. Code, § 76104.6, subd. (a)(1)), and a $1 penalty to finance Department of Justice forensic laboratories (Gov. Code, § 76104.7). We will order these penalty assessments included in the corrected abstract of judgment.

## IV.  DISPOSITION

The clerk of the superior court is directed to correct the abstract of judgment to reflect that defendant's conviction of actively participating in a criminal street gang (§ 186.22, subd. (a)) was reversed, and to reflect that the trial court imposed a $10 crime prevention fine (§ 1202.5) with the following penalty assessments: a $10 state penalty assessment (§ 1464, subd. (a)(1)), a $2 state surcharge (§ 1465.7), a $3 state courthouse construction penalty (Gov. Code, § 70372), a $7 additional penalty (Gov. Code, § 76000, subd. (a)(1)), a $2 additional penalty for emergency medical services (Gov. Code, §76000.5, subd. (a)(1)), a $1 penalty to implement the DNA Fingerprint, Unsolved Crime and Innocence Act (Gov. Code, § 76104.6, subd. (a)(1)), and a $1 penalty to finance Department of Justice forensic laboratories (Gov. Code, § 76104.7).

With these corrections, the judgment is affirmed.

14

_____
BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:




_____
MIHARA, J.




_____
MÁRQUEZ, J.